688 A.2d 1152

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald GIBSON, Appellant.**

Supreme Court of Pennsylvania.

Argued May 1, 1996.

Decided Jan. 22, 1997.

72

**74**

76

78

80

Jay S. Gottlieb, Philadelphia, for R. Gibson.

Catherine Marshall, Thomas W. Dolgenos, Philadelphia, for the Com.

Robert Graci, Harrisburg, for Office of Attorney General.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

CASTILLE, Justice.

This is a direct appeal from a sentence of death imposed by the Court of Common Pleas of Philadelphia County.[1] Follow-

1. 42 Pa.C.S. § 9711(h)(1).

ing a jury trial, appellant was convicted of two counts of first degree murder,[2] two counts of criminal conspiracy,[3] and one count of robbery.[4] The jury determined that the three aggravating circumstances it found outweighed the one mitigating circumstance it found and returned a sentence of death.[5] Post-verdict motions were denied and the trial court imposed the death sentence for each murder conviction. In addition, the trial court sentenced appellant to consecutive terms of five to ten years imprisonment on each criminal conspiracy conviction and ten to twenty years imprisonment on the robbery conviction.

## SUFFICIENCY OF THE EVIDENCE

Although appellant does not challenge the sufficiency of the evidence, as in all cases in which the death penalty has been imposed, this Court is required to independently undertake a review of the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The standard for reviewing the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Carpenter*, 511 Pa. 429, 435, 515 A.2d 531, 533–34 (1986). After a review of the record, we find that the evidence is sufficient to support appellant's conviction.

**2.** 18 Pa.C.S. § 2502(a).

**3.** 18 Pa.C.S. § 903.

**4.** 18 Pa.C.S. § 3701.

**5.** The aggravating circumstances were that appellant committed the killing while in the perpetration of a felony (robbery), 42 Pa.C.S. § 9711(d)(6); that in the commission of the offense, appellant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7); and that appellant had been convicted of another murder committed at the time of the offense at issue, 42 Pa.C.S. § 9711(d)(11). The mitigating circumstance was that appellant had no significant history of criminal convictions, 42 Pa.C.S. § 9711(e)(1).

The evidence presented at trial established that on December 24, 1990, appellant and two companions, Gregory Tancemore and David Greene, drove to Woody's Bar in Philadelphia, where approximately thirty other patrons were celebrating on Christmas Eve. While Greene waited in the car, appellant and Tancemore entered the bar and ordered drinks. After the bartender, Princess Pettaway, served the drinks, appellant got up and walked towards the restroom located at the rear of the bar where one of the bar's bouncers, Keith Simmons, was standing. Appellant confronted Simmons at the restroom door and pointed a .45 caliber semi-automatic handgun at Simmons' stomach. Simmons grabbed the handgun and, as appellant and Simmons struggled over the handgun, Sam Ziegler, the other bouncer for the bar, came to Simmons' aid.

While the three men were struggling over the handgun, Tancemore, who was also armed, began firing shots from the front of the bar. Appellant broke free of the two bouncers, took his handgun and joined Tancemore at the front of the bar. As the two began firing shots into the bar, Frederick Dukes, an off duty police officer who was patronizing the bar, drew his handgun. Appellant fired several shots at Officer Dukes, hitting him as well as Vernae Nixon, another patron. Appellant and Tancemore then fled the bar.

Police arrived on the scene several minutes later and transported both Officer Dukes and Nixon to the hospital in a police vehicle. Nixon, who was pronounced dead on arrival at the hospital, had been shot twice, once through the arm and once through the chest, a shot which pierced both lungs and two major arteries to the heart. Officer Dukes underwent several surgeries, but nevertheless died the next morning from his wounds. He had been shot in the right forearm and twice in the chest. One of the bullets passed through his liver and lodged in his aorta. The bullet which was recovered from Officer Dukes' body was a .45 caliber bullet.

On December 26, 1990, both Princess Pettaway and Keith Simmons separately identified appellant from photographic

arrays as one of the perpetrators.[6] Appellant was arrested later that afternoon and, after waiving his *Miranda* rights, gave the police two statements.[7] In the first statement, appellant admitted being in the bar that night, but denied having a handgun or having fired any shots. He stated that Tancemore had carried both a nine millimeter semiautomatic weapon and a .45 caliber semi-automatic handgun but had handed appellant a .38 caliber revolver as they entered the bar. Appellant stated that Tancemore told him to follow Simmons and another man, who Tancemore said was selling cocaine, into the men's room and to detain them there at gunpoint. Appellant stated that Simmons saw his handgun and that the two struggled until Tancemore began firing shots from the front of the bar. When appellant reached the front of the bar, Tancemore told him to "get the money." Appellant claimed that Tancemore fired all of the shots.

However, during a break in the interview, police were informed that a .45 caliber handgun had been found in Greene's apartment and that Greene claimed that appellant had given him that handgun for safekeeping. When appellant was confronted with that information, he admitted that the .45 caliber handgun was his and that he had taken it to the bar on the night of the murders and subsequently hidden it at Greene's apartment. He stated that after struggling with Simmons, he went to the front of the bar and saw Officer Dukes draw his handgun. Appellant stated that he then fired three shots at Officer Dukes before fleeing the bar.

At trial, appellant testified on his own behalf that he, Tancemore and Greene had gone to a bar on Christmas Eve. He further testified that he had in his possession a .38 caliber

6. Tancemore was also identified by several witnesses in the bar who knew him by name. When police attempted to arrest Tancemore, he fled across rooftops to a house where he took two women hostage and held police at bay for several hours. Tancemore ultimately committed suicide with a nine millimeter semi-automatic handgun. A ballistics expert testified that bullets recovered from the ceiling of Woody's bar had been fired from that handgun.

7. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

handgun which he carried at all times for protection because he dealt illegal drugs. He stated that he and two other men in the bar struggled over his firearm near the restroom. However, appellant denied having fired any shots in the bar or having intended to commit a robbery. Rather, he claimed that Tancemore and Greene had begun firing shots while appellant and the other men were struggling over appellant's handgun.

Evidence is sufficient to sustain a conviction for first degree murder where the Commonwealth establishes that the defendant acted with a specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was done with deliberation. 18 Pa.C.S. § 2502(d); *Commonwealth v. Mitchell*, 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). Specific intent to kill can be inferred by the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Butler*, 446 Pa. 374, 378, 288 A.2d 800, 802 (1972). Furthermore, all co-conspirators to a murder can be found guilty of first degree murder, regardless of who actually inflicted the wound which resulted in death. *Commonwealth v. Jones*, 542 Pa. 464, 484, 668 A.2d 491, 500 (1995), *citing Commonwealth v. Joseph*, 451 Pa. 440, 449, 304 A.2d 163, 168 (1973).

Here, the evidence the Commonwealth presented sufficiently established that appellant and a co-conspirator went to a crowded bar with the intention of committing a robbery and fired numerous shots into the crowd, killing two patrons as the result of gun shot wounds to vital parts of their bodies. Such evidence clearly demonstrated that the killings were committed with the malice aforethought sufficient to sustain appellant's convictions for first degree murder. Hence, no relief is warranted on this issue.

## JURY SELECTION

### 1. *Batson* Claim

Appellant's first allegation of error is that the Commonwealth violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.

1712, 90 L.Ed.2d 69 (1986), by using its peremptory challenges to exclude all black prospective jurors from the final jury panel. In order to establish a *prima facie* case on a *Batson* claim defendant must make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury. *Commonwealth v. Simmons,* 541 Pa. 211, 231–32, 662 A.2d 621, 631 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996), *citing, Commonwealth v. Spence,* 534 Pa. 233, 246, 627 A.2d 1176, 1182–83 (1993).

At the outset, appellant contends that the trial court found a *prima facie* case of discriminatory exercise of peremptory challenges by the prosecutor. However, a review of the record demonstrates that, although appellant twice raised a *Batson* claim, the trial court found on both occasions that appellant had failed to make out a *prima facie* case, and therefore did not require the Commonwealth to explain the exercise of its peremptory strikes. N.T. 9/27/91 at 96–98; N.T. 10/1/91 at 114.[8]

■ Furthermore, the record does not indicate the racial composition of the venire, the race of the venirepersons against whom appellant exercised his peremptory strikes or the final racial composition of the jury. Thus, the record does not support appellant's contention that he was tried by a jury violative of the *Batson* rule. The record does demonstrate, however, that at the time the Commonwealth used its eleventh peremptory strike, it had used only seven strikes against black venirepersons, one of which appellant conceded was race-neutral. N.T. 9/26/91 at 97; 10/1/91 at 114. This Court has held that the use of ten to twelve peremptory strikes against

8. This is the first of several misrepresentations of the record in appellant's brief to this Court. Rule 3.3(a)(1) of the Rules of Professional Conduct provides that, "a lawyer shall not make a false statement of material fact or law to a tribunal[.]" Appellant has also violated Pa.R.A.P. 2117 by failing to include in his brief a statement of facts, a table of citations, or references to the place where the issue was preserved below. He has also failed to provide any references to the places in the record where the issues arose, as required by Pa.R.A.P. 2119(c), for most issues raised.

black venirepersons does not in itself establish a *prima facie* case of discrimination. *Commonwealth v. Wilson,* 538 Pa. 485, 500–01, 649 A.2d 435, 443 (1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995). Therefore, absent additional evidence of discrimination, appellant has failed to establish a *prima facie* case of discriminatory exercise of peremptory strikes in violation of *Batson.*[9]

## 2. Jury Taint

Appellant's second claim is that the trial court erred in refusing to dismiss the entire jury venire after learning that one member of the venire had stated, within the hearing of other potential jurors, that he knew one of the victims and that drugs were involved in the crime. Appellant claims that the venireman informed "a goodly portion" of the jury that he was a friend of both victims, that he was at the crime scene and that there had been drugs at the crime scene. Appellant further claims that the court failed to conduct a full inquiry into whether the panel was tainted, and that only one juror was excused for cause as a result of hearing the statements.

Initially, we must note that appellant's contention that the court failed to inquire into possible jury taint is belied by the record. To the contrary, the court asked each prospective juror who had been present in the hallway when the comment was made whether he or she had heard any other prospective juror comment on the case. Furthermore, the court told defense counsel that he would grant wide latitude in allowing *voir dire* of the remaining prospective jurors as to whether

9. Furthermore, although the prosecutor was not asked to articulate race-neutral reasons for the exercise of the peremptory challenges, the record demonstrates that ten of the thirteen jurors against whom the Commonwealth exercised peremptory strikes equivocated on the death penalty. *Commonwealth v. Bond,* 539 Pa. 299, 310, 652 A.2d 308, 313 (1995)(upholding as racially neutral strikes of juror who equivocated on death penalty). One juror stated that he believed that people have the right to carry concealed weapons despite laws to the contrary in this Commonwealth; one juror stated that he believed police officers might be inclined to lie; and one juror appeared confused, giving responses which did not bear any relation to the questions she was asked.

they had heard any such comments.[10] N.T. 10/2/91 at 20.

Moreover, a review of the record demonstrates that the comments were made in the presence of only six other prospective jurors in the hallway outside the courtroom.[11] N.T. 10/1/91 at 159, 162. *Voir dire* of those six as to whether they had heard the alleged comments revealed that only two had heard the comments, and those two along with the speaker were excused for cause. Furthermore, the remaining four venirepersons who had been present when the comments were made were not seated on the jury.[12] Because appellant has failed to demonstrate that any of the jurors who actually heard his case had been exposed to the comments in question, the trial court did not err in refusing to dismiss the entire venire. *Commonwealth v. Martin*, 465 Pa. 134, 158–59, 348 A.2d 391, 403–04 (1975), *cert. denied*, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976) (defendant was not prejudiced by conversation between prospective jurors and friends of victim where none of the prospective jurors involved were seated on the final jury).[13]

10. Despite the trial court's express permission to do so, trial counsel did not ask any questions concerning the comments of any juror other than the six who were present in the hallway when the comment was made.

11. The two prospective jurors who testified that they heard another juror comment on his knowledge of the case both testified that there were only six other jurors present when the comment was made.

12. The prosecutor used a peremptory strike, defense counsel used two peremptory strikes and two jurors were excused for cause unrelated to the comments.

13. Appellant further contends that trial counsel was ineffective for failing to move for a mistrial under Pa.R.Crim.P. 1118(b), and that the trial court erred in not declaring a mistrial *sua sponte* pursuant to that rule, which provides:

When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

Pa.R.Crim.P. 1118(b). At the outset, this claim was not raised in appellant's statement of matters complained of on appeal and is therefore waived. Pa.R.A.P. 1925(b). Moreover, the trial court took steps to ensure that no member of the venire who may have been tainted was seated on the jury. Appellant fails to explain how he was prejudiced by counsel's failure to request a mistrial where no tainted juror was on the

*TRIAL COURT ERRORS—GUILT PHASE*

## 1. Scope of cross-examination

■■■ Appellant contends that the trial court erred in permitting the Commonwealth to cross-examine defense witnesses on certain issues. A trial court has broad discretion to limit the scope of cross-examination, and rulings regarding the scope of cross-examination may not be reversed absent a showing that the court abused that discretion. *Commonwealth v. Birch,* 532 Pa. 563, 566, 616 A.2d 977, 978 (1992).

First, appellant alleges that the trial court erred when it overruled his objection to the Commonwealth's use of appellant's earlier testimony from the evidence suppression hearing that he had not been at Woody's bar on the night of the murder in order to attack appellant's testimony at trial that he had been in Woody's bar on that night. Appellant objected on the grounds that there was no inconsistency between his suppression testimony and his trial testimony.[14] A review of the record reveals that this claim is patently baseless since the trial court sustained appellant's objection. N.T. 10/7/91 at 134.

■■■ Next, appellant contends that the trial court erred in allowing the Commonwealth to cross-examine defense witness Lamont Jones concerning a conversation he had with defense counsel just prior to testifying.[15] Appellant fails to

final jury. Finally, no manifest necessity existed requiring the trial court to declare a mistrial *sua sponte. Compare Commonwealth v. Stewart,* 456 Pa. 447, 317 A.2d 616, *cert. denied,* 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974) (manifest necessity required trial court to *sua sponte* declare a mistrial where court learned mid-trial that tipstaff who was serving jury was victim's father). Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra* at 26, 454 A.2d at 942.

**14.** A review of the record of the suppression hearing demonstrates that appellant testified that, while he had been in a bar on Christmas Eve, he did not know the name of the bar or where it was located.

**15.** Trial counsel failed to object to this line of questioning and therefore the claim is technically waived. Pa.R.A.P. 302(a). While we have recognized that waiver rules are often relaxed in capital cases, *Zettlemoyer, supra* at 26–27 n. 3, 454 A.2d at 942 n. 3, we have held in other capital cases that issues not raised before the trial court were waived. *See Commonwealth v. Williams,* 541 Pa. 85, 92, 660 A.2d 1316, 1320

explain in his brief to this Court the content of either the witness' testimony or of the challenged questions. A review of the record reveals that Lamont Jones was called by appellant to identify the murder weapon allegedly used by appellant as belonging to David Greene and not appellant. However, moments before Jones' testimony, Jones had approached the prosecutor and identified another handgun as belonging to David Greene. Accordingly, on cross-examination the Commonwealth elicited testimony from the witness that, moments before his testimony, Jones had identified another weapon as belonging to Greene,[16] and then had conferred privately with defense counsel before taking the stand. N.T. 10/7/91 at 226–29. When questioned concerning the change in his testimony between talking to the prosecutor and actually testifying, the witness stated only that the handgun he was "supposed to identify" as Greene's was the murder weapon, a .45 caliber handgun. *Id.* at 228. Given the change in the witness' identification, the trial court did not abuse its discretion in allowing the Commonwealth to impeach the witness' credibility.[17] *Commonwealth v. Cheatham,* 429 Pa. 198, 202–03, 239 A.2d 293, 295–96 (1968) (cross-examination to test a witness' credibility is permissible).

(1995), and cases cited therein. This Court does not countenance trial counsel intentionally sitting by silently at trial only later to complain of trial errors on appeal after an unfavorable verdict. That a matter is a death penalty case in no way relieves trial counsel of the duty to raise appropriate contemporaneous objections at trial to allow the trial court to cure any alleged error as well as preserve issues for appellate review. Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra* at 26, 454 A.2d at 942.

16. The handgun which the witness initially identified as Greene's was the nine millimeter semi-automatic with which Gregory Tancemore committed suicide. This encounter was corroborated by a rebuttal witness for the Commonwealth who observed the misidentification. N.T. 10/7/91 at 260–61.

17. Appellant further contends that the Commonwealth should not have been permitted to call a rebuttal witness to testify to Jones' prior misidentification of the murder weapon or to question Jones regarding whether he had discussed the case with other witnesses in violation of a sequestration order. Although appellant does not develop these arguments, both the cross-examination and the rebuttal witness were also permissible to impeach Jones' credibility.

## 2. Denial of continuance

Next, appellant contends that the trial court erred in denying him a continuance to secure for trial the appearance of a witness whose testimony appellant argues was crucial because it bore upon the voluntariness of appellant's statements to police before arraignment. The witness in question, Dr. Fadeyibi, a doctor of education who was employed by the Public Defender's Association, had testified at the hearing on the motion to suppress that he had been present when appellant was arraigned, that appellant's face appeared puffy and that appellant stated to him at that time that he had been beaten by police. N.T. 9/24/91 at 135. Dr. Fadeyibi was subpoenaed to appear on October 7, 1991, but failed to appear. According to the trial court opinion, after an off-the-record discussion appellant was given twenty-four hours to locate the missing witness. On October 8, Dr. Fadeyibi still failed to appear and, after appellant had called all of his other witnesses, defense counsel requested a continuance in order to locate Dr. Fadeyibi. The trial court gave defense counsel an opportunity to make telephone calls in an effort to locate the witness on October 8, but when that attempt was not successful, the trial court denied the request for a continuance. Defense counsel failed to demonstrate that he had undertaken any effort to secure the witness other than issuing a subpoena and making a few telephone calls after the witness failed to appear on two occasions.[18]

The decision to grant or deny a continuance to allow a party an opportunity to procure a witness is within the discretion of the trial court, and will not be disturbed absent an abuse of discretion. *Williams, supra* at 19, 640 A.2d at 1260. Four other defense witnesses testified at trial that appellant appeared as if he had been beaten, and appellant himself testified that he had signed both statements he made to the police prior to arraignment because the police were beating him. Because Dr. Fadeyibi's testimony was merely cumulative of testimony from five other witnesses, the trial

18. A bench warrant was not requested pursuant to 42 Pa.C.S. § 5904(d) for failure to appear in response to a subpoena.

court did not abuse its discretion in denying a request for a continuance on the fourth day of trial.

### 3. Jury instructions [19]

■■■■■ Next, appellant raises several claims that the trial court erred in its formulation of jury instructions. When reviewing jury instructions, the charge must be considered as a whole. *Commonwealth v. Prosdocimo*, 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990). The trial court has broad discretion in its phrasing of jury instructions so long as the instructions given adequately reflect the law. *Id.*

Appellant first contends that the trial court erred in failing to instruct the jury that third degree murder requires an intent to commit serious bodily injury. However, a review of the record confirms that the trial court *did* so charge the jury. N.T. 10/8/91 at 165–66. Therefore, this baseless claim is rejected.

Appellant next claims that the trial court erred in instructing the jury on the elements of conspiracy to commit robbery rather than conspiracy to commit murder because he was charged with conspiracy to commit murder, not conspiracy to commit robbery.[20] However, the record once again belies appellant's claim. The trial court did not charge the jury on the elements of conspiracy to commit robbery, but on the elements of conspiracy generally. Appellant apparently interprets the charge as relating to conspiracy to commit robbery because it was given in the context of the charge pertaining to the felony murder doctrine. The trial court charged the jury that appellant could be convicted of felony murder if he and Tancemore were partners in committing the underlying felony of robbery. N.T. 10/8/91 at 163–64. Nonetheless, the trial court did not charge the jury on the elements of conspiracy to

---

**19.** Appellant raised no objections to the trial court's jury instructions and the following issue are therefore waived. We will nevertheless address the issues in order to avoid future claims of ineffective assistance of appellate counsel. *Zettlemoyer, supra.*

**20.** Not only did appellant fail to object to this claim at trial, but it was not raised in his statement of matters complained of on appeal and is therefore also waived under Pa. R.A.P.1925(b).

commit robbery and did not inform the jury that appellant had been charged with conspiracy to commit robbery. Therefore, this baseless claim is rejected.[21]

Appellant also contends in his statement of questions presented that the trial court erred in failing to "give a charge on identification testimony." However, appellant's argument in support of this claim in his brief to this Court fails to address this claim and instead discusses the *inadmissibility* of inconsistent or tainted identification testimony. Significantly, appellant did not attempt to have the identification testimony of the eye-witnesses suppressed, and, notwithstanding appellant's contentions to the contrary, there is nothing in the record which indicates that the identifications were inconsistent or the result of unduly suggestive photographic arrays which would have possibly tainted the in-court identifications. *Commonwealth v. Carter*, 537 Pa. 233, 253–54, 643 A.2d 61, 71 (1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995) (in-court identification following unduly suggestive out-of-court identification is inadmissible unless the totality of the circumstances establish an independent basis for the in-court identification).

Appellant further contends that the trial court should have given the jury a *Kloiber* instruction that it should view with caution the identification testimony of Officer Prince Parker, an off-duty police officer who was a witness to the murders, since he was unable to identify appellant from a photographic array. Under *Commonwealth v. Kloiber*, 378 Pa. 412, 424–25, 106 A.2d 820, 826–27, *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954), a charge that a witness' identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the

---

21. Appellant also claims that the trial court erred in failing to instruct the jury on the elements of conspiracy to commit murder, with which appellant was charged. However, as the court did instruct the jury on the elements of conspiracy generally and on the elements of murder, this claim is also meritless.

defendant; or (3) had a problem making an identification in the past.

Here, Officer Parker testified that one of the photographs shown to him was familiar, but that he chose to wait for an opportunity to make a positive in-person identification. N.T 10/4/91 at 73–74. When Officer Parker did see appellant in person at trial, he made an immediate positive identification. Officer Parker also testified that he had sufficient opportunity to observe appellant because he was seated next to him at the bar for several minutes. The trial court, under these circumstances, was not required to instruct the jury to view with caution the unequivocal in-court identification of appellant merely because the identifying witness did not pick appellant's photograph out of an array. *Commonwealth v. Yarris*, 519 Pa. 571, 600, 549 A.2d 513, 527–28 (1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989) (*Kloiber* charge not required where one witness failed to identify defendant at the preliminary hearing and one witness expressed some doubt when identifying defendant in a photographic array but both unequivocally identified defendant at trial).[22]

## TRIAL COURT ERROR—PENALTY PHASE

### 1. Jury instruction on mitigating circumstances [23]

Appellant next contends that the trial court erred in instructing the jury regarding mitigating circumstances. Appellant's argument in support of this issue is undeveloped and does not explain with particularity why the given instruction was improper. Accordingly, he has failed to convince us that error occurred.[24]

22. Moreover, since appellant himself testified that he was in the bar with a handgun at the time of the murders, any error in failing to give the desired instruction was harmless.

23. Once again, appellant waived this issue at trial by failing to object to the charge. However, we will address the claim under the relaxed waiver rule of *Zettlemoyer, supra.*

24. The trial court charged the jury as follows:

### 2. Aggravating circumstances submitted to the jury [25]

 Appellant argues that the trial court erred in submitting to the jury the aggravating circumstance that Officer Dukes was a police officer killed in the performance of his duties. However, because the jury did not find that aggravating circumstance to exist, any error in submitting that particular aggravating circumstance to the jury was harmless. *Williams, supra* at 25, 640 A.2d at 1263.

## *PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT* [26]

 Appellant next contends that the prosecutor engaged in misconduct in closing arguments during the guilt phase of trial. It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. *Simmons, supra* at 246–47, 662 A.2d at 638. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward

> Your verdict must be a sentence of death if you unanimously find, that is all of you find at least one aggravating circumstance and no mitigating circumstances. Or, if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. If you do not all agree on one or the other of these findings, then the only verdict that you may return is a sentence of life imprisonment.
> The Commonwealth must prove any circumstances beyond a reasonable doubt. . . . By contrast, the defendant must prove any mitigating circumstances; however, he only has to prove it by a preponderance of the evidence, that is, by the greater weight of the evidence. N.T. 10/10/91 at 76–77. This charge was substantially similar to ones which have recently been found by this Court to be proper. *See, Commonwealth v. Murphy*, 540 Pa. 318, 336, 657 A.2d 927, 936 (1995); *Commonwealth v. Banks*, 540 Pa. 143, 150, 656 A.2d 467, 470, *cert. denied*, —— U.S. ——, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995). Therefore, even were this claim developed, we find no error.

25. This claim has also been waived due to appellant's failure to object. However, we will address the claim under the relaxed waiver rule of *Zettlemoyer, supra.*

26. This is yet another claim which has been waived due to appellant's failure to object. Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra* at 26, 454 A.2d at 942.

the defendant such that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Sam*, 535 Pa. 350, 362, 635 A.2d 603, 608 (1993), *cert. denied*, 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994).

In considering appellant's claims of prosecutorial misconduct, we must emphasize that a prosecutor's comments are not evidence. *Commonwealth v. LaCava*, 542 Pa. 160, 181–82, 666 A.2d 221, 231 (1995), *citing Commonwealth v. Green*, 525 Pa. 424, 461, 581 A.2d 544, 562 (1990). Indeed, the trial court clearly and repeatedly so instructed the jury, which is presumed to follow the court's instructions, on this rule of law. N.T. 10/3/91 at 12–13, 10/8/91 at 181; *Commonwealth v. Johnson*, 542 Pa. 384, 402–03, 668 A.2d 97, 106 (1995), *citing, Commonwealth v. Carter*, 537 Pa. 233, 265, 643 A.2d 61, 77 (1994). With these standards and circumstances in mind, we find that the complained-of comments do not warrant relief.

The first statement which appellant argues was improper was:

In that regard I am going to discuss with you what you heard as character testimony, and you heard only one trait discussed and that is the trait of truthfulness. You did not hear other traits discussed, so you cannot make assumptions regarding them; that is, law-abidingness or peacefulness. You heard only truthfulness discussed, and I submit character testimony must be examined and must be weighed. It must be. When you do that, consider from whom it came and the purpose for which it was elicited. That is, as you heard some people say well, he is alright with me, that is not saying someone is of good character, they have a good reputation. In fact, the most interesting testimony is from the gentleman with the couple names [sic]. He said well, he heard rumors. It's interesting testimony, but that doesn't have anything to do with the reputation of truthfulness. What you heard is people say I have known him for a long time, and this is from people who none of them were aware that he was a drug dealer, as he himself stated, none of them knew he carried a gun, as he himself stated. Consider the truthfulness of a person like that and consider the value

of that character testimony. And if you can, for one second look at it this way. I have six sisters, I have a brother, and I think if I were on trial, they would come in and testify to my good character for something. I might not get a unanimous vote all the time, but they would say generally I have a good character. That is because they love me, but they didn't know particularly what happened with the incident, just as particularly none of these people know particularly what happened at Woody's bar on Christmas Eve.

Now, you have a duty and an obligation and you have to look at the evidence and make a determination. Family members don't. They don't have to accept what the truth is. They don't have to accept the guilt of the person they are concerned with, and they probably never will. But when you hear the truth from the witness stand, you have that obligation and you must accept that responsibility.

N.T. 10/8/91 at 147–49.

 Appellant contends that, by referring to the weight and value of appellant's reputation witnesses, the prosecutor "disparage[d] the guaranteed right of an accused to have the jury hear of his good reputation." However, appellant was not prevented from presenting character testimony, and did in fact call eleven character witnesses, nine of whom were relatives of appellant's.[27] The Commonwealth was permitted to ask the jury to consider the source of that character testimony in assessing the witnesses' credibility and the weight to be given to their testimony. *Commonwealth v. Van Cliff*, 483 Pa., 576, 586, 397 A.2d 1173, 1178, *cert. denied*, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979). The complained-of argument in the present case merely asked the jury to consider that appellant's character witnesses may have been biased and as such did not amount to prosecutorial misconduct.

27. Appellant's character witnesses were his mother, his sister, two aunts, two uncles, a cousin, his grandmother, the mother of his child, a friend of his mother's and his tax accountant. The testimony of one uncle and the mother's friend was stricken because the witnesses did not have any knowledge of appellant's reputation for truthfulness in the community but rather testified to their own opinions. N.T. 10/7/91 at 240–442; 10/8/91 at 38.

■ The second statement made by the prosecutor during closing arguments which appellant contends was improper was:

But I will tell you this. There is nothing that you can do now, there is not a thing in the world you can do now for Fred Dukes. He is gone. Or Vernae Nixon. They are gone. There are no words I can say that can do anything for them, because they have gone where we are all going to go, but they have gone all too soon because of the murderous acts of that man. But what you can do and what you must do is deliver the only remaining call they have upon anyone on this earth, and that is a call for justice, because you can't return to sons their father or to a wife her husband or to a daughter her mother.

\*　　\*　　\*　　\*　　\*　　\*

... So just do what is right for yourselves, for justice, for all the participants, because when you do, you are not giving Vernae Nixon's mother her daughter back, you are not giving Miss Dukes her husband back or her sons their father back, you are only giving this defendant what he deserves....

N.T. 10/8/91 at 154–55, 157.

Appellant does not explain in his brief to this Court why this comment was improper. However, this Court has held that comments similar to those of which appellant complains were not prosecutorial misconduct. *See, Commonwealth v. Ragan,* 538 Pa. 2, 36, 645 A.2d 811, 827 (1994) (argument that acquittal would be "failure of justice" was not prosecutorial misconduct); *Commonwealth v. Marshall,* 534 Pa. 488, 501–02, 633 A.2d 1100, 1106–07 (1993) (trial counsel was not ineffective for failing to object to argument that the eyes of the dead victim were "open and looking to you for justice"); *Commonwealth v. Baker,* 531 Pa. 541, 557–59, 614 A.2d 663, 671–72 (1992) (arguments that the jury should put its arms around the victim's family and "promise the individuals who did this will be responsible" and that victim could not be brought back to his family were not prosecutorial misconduct). Therefore, we

find that the complained of comments were not improper and that a mistrial was unwarranted.

## *INEFFECTIVE ASSISTANCE OF COUNSEL*

Appellant next raises numerous claims of ineffective assistance of trial counsel.[28] When asserting ineffective assistance of counsel, appellant must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have any reasonable basis designed to effectuate his client's interests; and (3) counsel's ineffectiveness prejudiced appellant. *Commonwealth v. Edmiston,* 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993), *citing, Commonwealth v. Pierce,* 515 Pa. 153, 158, 527 A.2d 973, 975 (1987). Counsel is presumed to have acted in his client's best interest; thus, it is appellant's burden to prove otherwise. *Commonwealth v. Miller,* 494 Pa. 229, 233, 431 A.2d 233, 235 (1981).

First, appellant contends that trial counsel was ineffective in failing to seek suppression of a statement to police because it was obtained in of violation the "six-hour rule." [29] This claim is baseless. In *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987), this Court held that statements obtained within six hours of one's arrest were admissible even though arraignment occurred later. *Id.* at 406, 525 A.2d at 1182–83. Here, appellant was arrested at 4:45 p.m. on December 26, 1990, and he gave a statement to police on that date which began at 6:45 p.m. and was time stamped as completed at 10:17 p.m. Although appellant was not arraigned until 8:30 the next morning, because appellant finished his statement *within* six hours after his arrest, his statement was clearly

28. Appellant is represented by different counsel in his appeal to this Court. Therefore, these claims of trial counsel's ineffectiveness are properly raised. *Commonwealth v. McBee,* 513 Pa. 255, 261, 520 A.2d 10, 13 (1986) (generally, counsel cannot raise his own ineffectiveness on appeal).

29. The six-hour rule was set forth in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), wherein this Court stated that if an accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment is *per se* inadmissible.

admissible under *Duncan, supra.* Trial counsel cannot be ineffective for failing to raise this meritless claim.

■ Appellant next contends that trial counsel was ineffective for failing to object to the prosecutor's comments during opening argument that co-defendant Gregory Tancemore had committed suicide. Opening statements must be fair deductions from the evidence which the prosecutor expects will be presented at trial. *Commonwealth v. Jones,* 530 Pa. 591, 607, 610 A.2d 931, 938–39 (1992). Appellant does not identify the particular portions of the prosecutor's opening statement which he finds objectionable or explain how he was prejudiced by such references.[30] Hence, this claim fails to convince us that relief is warranted.

■ Next, appellant contends that trial counsel was *per se* ineffective by virtue of his statement to the trial court during trial that he was unprepared and had not conferred with his witnesses. Once again, appellant has failed to provide a citation to the record in his brief. However, a review of the record demonstrates that at the conclusion of the Commonwealth's case-in-chief, trial counsel made the following statement:

I would ask the Court, if the Court anticipates I am to proceed this afternoon, to break for an early lunch, because I am simply not prepared, I have not conferred with my witnesses. I have subpoenaed a number of people who are not in the courtroom. I don't know if they are in the hallway. My detective is not here.

**30.** The prosecutor made several brief references to Tancemore's suicide in his opening statement while telling the jury what evidence the Commonwealth would present over the course of the trial. N.T. 10/3/91 at 16, 22–24. Essentially, his comments were that the Commonwealth would present evidence that, when police attempted to arrest Tancemore several days after the murders, Tancemore took several hostages and, following a stand-off, killed himself with the same weapon which he fired at the bar on the night of the murders, and that the weapon itself as well as projectiles fired from that weapon and recovered from the scene of the murders would be admitted into evidence. Because the Commonwealth presented evidence concerning Tancemore's suicide, N.T. 10/4/91 at 152–61, it was not improper for him to refer to that evidence in his opening statement.

N.T. 10/7/91 at 75. The only argument presented by appellant in support of this claim is that, had trial counsel been prepared, he would have called witnesses to testify that appellant was too drunk to form the intent required for first degree murder. In order to establish that counsel was ineffective for failing to call witnesses, appellant must show, in addition to meeting the general standard to establish ineffective assistance of counsel, that the witnesses existed, were available and willing to testify on appellant's behalf; that counsel knew of or should have known of the existence of the witnesses; and that appellant was prejudiced by the absence of the testimony which would have been offered. *Commonwealth v. Speight*, 544 Pa. 451, 463–65, 677 A.2d 317, 323 (1996). Because appellant fails to identify any witnesses who would have testified to that effect, he has failed to develop this claim and it is rejected.

Next, appellant claims that trial counsel was ineffective for failing to object to the Commonwealth's cross-examination of appellant's character witnesses about whether they knew that appellant dealt drugs and carried a handgun because that conduct did not relate to appellant's reputation for truthfulness. The Commonwealth asked this question as a result of appellant's testimony in his case-in-chief that he carried a handgun for his own protection because he was a drug dealer. N.T. 10/7/91 at 85. The scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Birch, supra.* Once a defendant has put his character into evidence, the Commonwealth may properly inquire regarding the scope of the character witnesses' knowledge and the basis of the opinion. *Commonwealth v. Peterkin*, 511 Pa. 299, 318, 513 A.2d 373, 382 (1986), *cert. denied* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987) (character witnesses may be cross-examined regarding their knowledge of specific instances of conduct in order to test the accuracy of their testimony and the standards by which they measure reputation); *Commonwealth v. Amos*, 445 Pa. 297, 300, 284 A.2d 748, 750 (1971)

(defendant's prior criminal record may be used to test a character witness' knowledge of the defendant's reputation).

One of the witnesses who testified to appellant's reputation for truthfulness was his tax accountant, who was unaware that appellant was dealing drugs. N.T. 10/8/91 at 11. One of appellant's uncles testified that had he known that appellant carried a handgun and sold drugs, appellant would not have been welcome in the uncle's home. N.T. 10/8/91 at 26. Moreover, the witnesses who were unaware of appellant's involvement with guns and drugs stated that appellant had *concealed* that information from them. It was not an abuse of discretion for the trial court to allow the prosecutor to inquire into whether appellant had concealed information from his family and his accountant after they had testified to his reputation for truthfulness.

Appellant next asserts that trial counsel was ineffective for failing to object to the prosecutor's closing argument during which he stated the following:

You will hear the Judge charge you in the degrees of murder. There are three degrees of murder: third degree murder, second degree murder and first degree murder. Third degree murder is essentially any murder that occurs without the specific intent to kill, but with malice, coldness of heart. Primarily it is when a person intends to cause injury or serious bodily injury but not death, but death nonetheless results. That is a third degree murder.

N.T. 10/8/91 at 129.[31] Appellant claims that the prosecutor's argument regarding third degree murder incorrectly stated the law because it told the jury that third degree murder required that there be no intent to kill. However, the prosecutor did correctly define third degree murder; hence counsel was not ineffective for failing to object. *Commonwealth v. Carter,* 481 Pa. 495, 498–99, 393 A.2d 13, 15 (1978) (third degree murder is the unlawful taking of a human life with

---

**31.** Appellant failed to raise this claim in his statement of matters complained of on appeal, and it is therefore waived under Pa.R.A.P. 1925(b). We will nevertheless address it under the relaxed waiver rule of *Zettlemoyer, supra.*

malice but without the specific intent to kill); 18 Pa.C.S.
§ 2502(c).

■ Next, appellant contends that trial counsel was ineffective for failing to object to the instruction by the trial court that appellant could be convicted of first-degree murder as an accomplice without having the specific intent to kill. The trial court instructed the jury on accomplice liability as follows: [32]

A defendant is guilty of a crime if he is an accomplice of another person who commits the crime.... He is an accomplice if, with the intent of promoting or facilitating the commission of the crime, he solicits, commands, encourages, requests the other person to commit it, or he aids, agrees to aid or attempts to aid the other person in planning or committing it....

You may find the defendant guilty of a crime on the theory that he was an accomplice, as long as you are satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of the person who committed it.

N.T. 10/8/91 at 172–73.[33] This language is almost identical to that which this Court approved in *Commonwealth v. Thompson*, 543 Pa. 634, ——, 674 A.2d 217, 222–23 (1996). Therefore, trial counsel was not ineffective for failing to make a meritless objection. *Commonwealth v. Manigault*, 501 Pa. 506, 510, 462 A.2d 239, 241 (1983) (trial counsel will not be deemed ineffective for failing to raise a meritless claim).

■ Next, appellant argues that trial counsel was ineffective for stipulating during the penalty phase that Officer Dukes was a police officer acting within the course of his duty, thereby unnecessarily conceding an aggravating circumstance. 42 Pa.C.S. § 9711(d)(1). However, the record reflects that

32. At the beginning of the jury instructions, the trial court instructed the jury that first-degree murder required the specific intent to kill. N.T. 10/8/91 at 158.

33. Appellant cites to the trial court's charge on second-degree murder, which appears at N.T. 10/8/91 at 158–65, in support of this argument. Appellant does not cite to the charge on accomplice liability, which appears later in the transcripts.

trial counsel stipulated only that Officer Dukes was carrying a .38 caliber semi-automatic pistol and his police identification badge. N.T. 10/10/91 at 5–6. Therefore, this claim, belied by the record, is baseless.[34]

Next, appellant contends that trial counsel was ineffective for failing to object to the following comment by the prosecutor during his closing argument in the penalty phase of trial: [35]

And the last and in Miss Nixon's most tragic circumstances, which her death demonstrates, is that during the commission of these murders a grave risk of death was encountered by other persons present, because in point of fact Miss Nixon suffered that fatal, grave risk. The bullet that was specifically intended—one of them intended to kill Officer Dukes killed her. That grave risk obtained for her and she is not with us today because of that.

N.T. 10/10/91 at 50–51.[36] Appellant contends that this argument violated *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704 (1992), because it allegedly improperly argued that the mere fact that multiple killings occurred meant that a grave risk of death to others had occurred.

However, appellant's reliance on *Stokes* is misplaced. In *Stokes*, the trial court instructed the jury that, because the defendant had killed three people, they *must* find that the aggravating circumstance existed, even with regard to the victim who was shot when he was alone in a hallway. *Id.* at 259–61, 615 A.2d at 713–14. The *Stokes* Court found that

34. The jury did not find as an aggravating circumstance that Officer Dukes was acting within the course of his duty. Therefore, there was no prejudice that could give rise to a claim of ineffectiveness.

35. Once again, appellant has raised a claim which he did not include in his statement of matters complained of on appeal. While this claim is therefore waived under Pa.R.A.P.1925(b), we will nonetheless address it under *Zettlemoyer, supra,* in order to avoid future claims of ineffective assistance of counsel.

36. The Commonwealth introduced evidence that appellant had created a grave risk of death to the numerous other patrons in the bar and therefore made this argument urging the jury to find that an aggravating circumstance under 42 Pa.C.S. § 9711(d)(7) existed.

aggravating circumstance (d)(7) "applies to situations where the defendant in the course of killing his particular victim acts in a manner which endangers the lives of others close in proximity to the intended or actual victim," and that the mere fact that more than one person was killed does not automatically mean that other persons were endangered when someone was intentionally shot so as to prove aggravating circumstance (d)(7). *Id.* at 260, 615 A.2d at 713. Here, the trial court did not instruct the jury that it was required to find aggravating circumstance (d)(7) as a matter of law, as did the trial court in *Stokes*. Instead, this case involved only an advocate's argument urging the jury that it *should* find that appellant created a grave risk of death to others when he and his co-conspirator fired shots into a crowd of approximately thirty people in a crowded bar, killing one of the people near the intended victim. Given that there was nothing improper about the prosecutor's argument, which focused upon the risk created by appellant's actions to everyone in the line of fire, not the mere number of victims, trial counsel was not ineffective for failing to object.[37]

Appellant's final claim of ineffective assistance of counsel is that trial counsel was ineffective for failing to request a jury instruction under *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) that a life sentence means that appellant must spend his natural life in prison without the possibility of parole. However, *Simmons* was not decided until after the completion of appellant's trial. Prior to *Simmons*, the law of this Commonwealth expressly prohibited juries from being informed that life meant life without parole. *Commonwealth v. Christy*, 540 Pa. 192, 217, 656 A.2d 877, 889, *cert. denied,* —— U.S. ——, 116 S.Ct. 194,

---

**37.** Appellant further argues that the prosecutorial misconduct was exacerbated by the trial court's failure to instruct the jury on this aggravating circumstance beyond merely reading the language of the relevant aggravating circumstance to the jury. As discussed above, the prosecutor committed no misconduct. Moreover, this Court has held that reading the language of the statute is sufficient instruction on aggravating circumstances. *Commonwealth v. Morales*, 508 Pa. 51, 71, 494 A.2d 367, 377–78 (1985); *Commonwealth v. Beasley*, 504 Pa. 485, 499, 475 A.2d 730, 738 (1984).

133 L.Ed.2d 130 (1995). Trial counsel will not be deemed ineffective for failing to anticipate a change in the law. *Id.*

Furthermore, *Simmons* states that a jury must be informed that life means life without the possibility of parole only when the prosecutor injects concerns of the defendant's future dangerousness into the proceedings. *Simmons, supra,* 512 U.S. at 155–57, 114 S.Ct. at 2190. Because the prosecutor here did not make appellant's future dangerousness an issue in any sense, the instruction would not have been required under *Simmons.* Therefore, this claim has no merit.

## *LEGALITY OF SENTENCE*

 Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court has a duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3). After reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor, but rather was based upon compelling evidence that appellant killed two patrons in the course of a robbery in a crowded bar.

 In addition, the evidence supports the finding of at least one aggravating circumstance specified in 42 Pa.C.S. § 9711(d). Here, the aggravating circumstances found by the jury were that appellant committed the killing while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6) (commission of a robbery); that in the commission of the offense, appellant had knowingly created a grave risk of death to another person in addition to the victim of the crime, 42 Pa.C.S. § 9711(d)(7); and that appellant had been convicted of another murder

committed at the time of the offense in issue, 42 Pa.C.S. § 9711(d)(11). Appellant's own statement established that appellant and Tancemore entered Woody's Playhouse bar with the intention of committing a robbery and that they took a substantial step in fulfilling that plan when appellant attempted to detain Keith Simmons in the restroom; several eyewitnesses testified that there were approximately thirty people in the bar when appellant and Tancemore began firing into the crowd; and appellant was convicted of two murders committed at the same time. Thus, the evidence supported each of these aggravating circumstances.

Finally, in accordance with *Zettlemoyer, supra* at 63, 454 A.2d at 961, we are required to conduct a proportionality review of the sentence.

> This Court does not take lightly its statutory and constitutional duties and will conduct an independent evaluation of all cases decided since the effective date of the sentencing procedures under consideration (September 13, 1978). This independent review mandated by 42 Pa.C.S.A § 9711(h)(3)(iii) will utilize all available judicial resources and will encompass all similar cases, taking into consideration both the circumstances of the crime and the character and record of the defendant in order to determine whether the sentence of death is excessive or disproportionate to the circumstances.

*Id.* Although appellant does not challenge the proportionality of the sentence, as this Court has mandated, we have conducted our own proportionality review by independently examining similar cases,[38] by reviewing the facts underlying the first

---

**38.** *Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763 (1994) (judgment of sentence of death affirmed where jury found as aggravating circumstances that the defendant committed the killing while in the perpetration of a robbery and that appellant had been convicted of another murder committed at the time of the offense at issue since he killed two people and as mitigating circumstances that the defendant had no significant history of prior criminal convictions, that the defendant was under extreme mental or emotional disturbance, the age of the defendant and an unspecified circumstance under the catchall provision); *Commonwealth v. Lambert*, 529 Pa. 320, 603 A.2d 568 (1992) (judgment of sentence of death affirmed where jury found as

degree murder, and by considering the sentencing data compiled by the Administrative Office of the Pennsylvania Courts (AOPC) pertaining to similar cases and conclude that the sentence of death imposed upon appellant is not excessive or disproportionate to the sentences imposed in similar cases. *See Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–08, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

Accordingly, we affirm the verdict and sentence of death imposed upon appellant by the Court of Common Pleas of Philadelphia County.[39]

NIX, Former C.J., did not participate in the consideration or decision of this case.

aggravating circumstances that the defendant committed the killing while in the perpetration of a robbery of a bar, that appellant had created a grave risk of death to someone other than the victim when he fired a gun in a crowded bar, and that appellant had been convicted of another offense for which a sentence of life imprisonment or death was imposable since he killed two patrons of the bar and as mitigating circumstances that the defendant had no significant history of prior criminal convictions).

**39.** Within ninety days of the date the sentence of death is upheld by this Court, the Prothonotary of this Court is directed to transmit to the Governor's office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).