J-A07036-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL BARONE, JR., | : | |
| | : | |
| Appellant | : | No. 232 WDA 2016 |

Appeal from the Judgment of Sentence August 20, 2015
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006683-2013

BEFORE:    OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY:  STRASSBURGER, J.:                **FILED JUNE 21, 2017**

Paul Barone, Jr. (Appellant) appeals from the judgment of sentence of life imprisonment after a jury convicted him of first degree murder and firearms not to be carried without a license.  We affirm.

In the early morning hours of March 3, 2013, John Sumpter was shot and killed by a .40 caliber bullet while he was sitting in a Dodge Intrepid parked across the street from a pizza shop in Munhall, Pennsylvania. Evidence from the scene established that at least three different weapons were fired during the incident.  Video from the pizza shop's security camera showed, and Appellant's trial testimony confirmed, that Appellant had fired shots in the direction of the Intrepid before fleeing in a black Audi.  Police followed the Audi to a point where Appellant exited the vehicle and fled on

_____
*Retired Senior Judge assigned to the Superior Court.

foot. Appellant was tracked and apprehended; shortly thereafter the police recovered a .40 caliber Glock pistol nearby.

On August 20, 2015, Appellant was convicted of first-degree murder and firearms not to be carried without a license and immediately proceeded to sentencing.[1] Appellant's timely-filed post-sentence motion was denied by order of January 20, 2016, and this timely-filed appeal followed. Appellant presents this Court with claims that the evidence was insufficient to sustain his murder conviction and that the murder conviction was against the weight of the evidence. Appellant's Brief at 1.

We first consider Appellant's sufficiency challenge. "In reviewing whether the evidence was sufficient to support a first-degree murder conviction or convictions, the entire trial record must be evaluated and all evidence considered." *Commonwealth v. Sanchez*, 82 A.3d 943, 967 (Pa. 2013).

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak

---

[1] In addition to the mandatory sentence of life imprisonment without the possibility of parole for the murder conviction, Appellant received a concurrent two-to-four-year sentence for the firearms conviction.

- 2 -

and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Hecker*, 153 A.3d 1005, 1008 (Pa. Super. 2016) (citation omitted).

Appellant does not claim that there was insufficient evidence upon which he could be found guilty of the firearms charge. Rather, he challenges only whether there was sufficient evidence to establish that he committed murder in the first degree.

There are three elements of first-degree murder: (i) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. As set forth in the third element, first-degree murder is an intentional killing, *i.e.*, a willful, deliberate and premeditated killing. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second. Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. Whether the accused had formed the specific intent to kill is a question of fact to be determined by the jury.

***Commonwealth v. Jordan***, 65 A.3d 318, 323 (Pa. 2013) (internal citations and quotation marks omitted).

Appellant contends that the Commonwealth proved neither that he was responsible for Sumpter's death nor that he acted with specific intent to kill. More precisely, Appellant argues that the Commonwealth failed to establish that Sumpter was killed by a bullet fired from his gun as opposed to one of the other guns utilized in the firefight. Appellant's Brief at 5. Appellant further maintains that the Commonwealth failed to prove that, in firing his weapon, he intended to kill any person, let alone that he specifically intended to kill Sumpter. ***Id.*** at 7. Neither argument has merit.

Appellant testified that he went to Club Pink on the evening in question with his friends J.J. and Travon in Travon's black Audi. N.T., 8/20/2015, at 97-99. Outside the club after it closed, Appellant perceived a threat from people he did not know who were congregated around an Intrepid. ***Id.*** at 102. Appellant ran to Travon's Audi, took the time to put on his sweatshirt, grabbed a gun from the Audi's glove box, and ran back toward the Intrepid to convince J.J. to leave. ***Id.*** at 102-06, 117-18, 125-26. Appellant was determined that he was "not gonna let one of us get killed," so once J.J. was between him and the Audi, Appellant decided "it's gonna be what it's gonna

be," assumed a shooting stance, and fired at the unknown men.[2]  *Id.* at 107.  Appellant then returned to the Audi and fired more shots out of the back seat of the car as they left the scene.  *Id.* at 107.

From this testimony alone, the jury was able to conclude reasonably that Appellant fired his gun with the intent to kill.  *See*, *e.g.*, *Commonwealth v. Smith*, 861 A.2d 892, 895 (Pa. 2004) ("[Smith] and his accomplices then retreated to their automobiles; as they did, [Smith], along with his co-conspirators, fired multiple shots into the crowd of people gathered outside the club.  One of these bullets struck [the victim] in the head, killing him.  This evidence is clearly sufficient to sustain the first degree murder conviction."); *Commonwealth v. Gibson*, 688 A.2d 1152, 1158 (Pa. 1997) (affirming first-degree murder conviction based upon multiple shots fired into a crowd in a bar).

There was also sufficient circumstantial evidence to establish that it was a shot fired from Appellant's gun that killed Sumpter.  Appellant testified that he fled the scene of the shooting in Travon's Audi with the police on their tail.  N.T., 8/20/2015, at 108.  At one point, Appellant told Travon to pull over, after which Appellant got out of the car and ran with the gun in his hand.  *Id.* at 108.

---

[2] While Appellant claimed that he fired only after the men across the street first fired at him, Quazek Chaneyfield testified to the contrary.  N.T., 8/18-19/2015, at 159.

Munhall police detective Jamie Caterino arrived on the scene in time to witness the final shots fired from the Audi. N.T., 8/18-19/2015, at 58-60. He and Officer Timothy Stolar followed the Audi, saw a male exit from the back seat of the Audi, followed the man's footprints in the snow, and apprehended Appellant. *Id.* at 64, 67-72. Shortly afterwards, Officer Jason Trout recovered a dry firearm from the snow in the vicinity of Appellant's capture. *Id.* at 137-38. Laboratory testing showed that the recovered firearm, a .40 caliber Glock, was the weapon that fired 18 .40 caliber cartridge casings recovered from the scene of the shooting. N.T., 8/20/2015, at 58. Testing could not confirm with scientific certainly that the Glock in question fired the bullet recovered during Sumpter's autopsy; however, that bullet had been .40 caliber and the markings on the fragments were consistent with having been fired from the Glock. *Id.* at 75-76. While evidence recovered from the scene of the shooting indicated that at least two other guns had been fired that night, the other casings recovered were either nine millimeter or .223 caliber. *Id.* at 56. *See also* N.T., 8/18-19/2015, at 304.

Thus, the jury heard evidence that Sumpter was killed by a .40 caliber bullet, and that connected Appellant to the only .40 caliber weapon fired during the altercation. This was sufficient to establish that Appellant's shot and killed Sumpter. *See Commonwealth v. Bond*, 985 A.2d 810, 819 (Pa. 2009) (holding evidence was sufficient to establish Bond was

responsible for the victim's death, although the .357 caliber Remington bullet fragments recovered from the victim's body could not be positively matched to the weapon fired by Bond or his co-conspirator, where the analysis showed that the fragments were of the same caliber and with a similar configuration as cartridges fired from firearms used by Bond and his co-conspirator). Appellant's sufficiency challenges merit no relief from this Court.

We next consider whether Appellant is entitled to relief on his claim that the murder conviction was against the weight of the evidence.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Smith*, 146 A.3d 257, 264–65 (Pa. Super. 2016) (internal citations and quotation marks omitted).

The trial court here exhaustively reviewed the evidence presented to the jury and concluded that "[t]he evidence and testimony in this case overwhelmingly support[] the verdict." Trial Court Opinion, 6/29/2017, at 13. The trial court found that the ballistics evidence; surveillance video; testimony of the witnesses, including that of Appellant; and Appellant's consciousness of guilt, shown by his flight from the police, support

Appellant's conviction. *Id.* at 13-14. From our review of the record, we discern no abuse of discretion in the trial court's determination.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2017