J-A28006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHAD BONAPARTE | |
| Appellant | No. 1388 EDA 2014 |

Appeal from the Judgment of Sentence April 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001491-2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED FEBRUARY 17, 2016**

Appellant, Rashad Bonaparte, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions of robbery, robbery of a motor vehicle, and criminal conspiracy.[1]  We affirm.

The trial court summarized the relevant facts of this case as follows:

> Francisco Bonilla, the complainant, knew Appellant and Antwoine Hunter ("co-defendant") from living in the same neighborhood.  On several occasions, he had given both men haircuts in his basement.
>
> On the night of December 7 and into the early morning hours of December 8, 2012, Francisco Bonilla was at Chuckles Bar on the corner of Frankford Avenue and Clearfield Street.  He had been playing pool for money and

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3702(a), and 903(c), respectively.

won about $100 that evening. At [2:00] a.m., when the bar closed, Mr. Bonilla exited and spoke to Appellant and Hunter, who had also been at the bar. Mr. Bonilla owned a green 1998 Pontiac Bonneville, which he had parked outside. Appellant and Hunter asked for a ride, and all three men entered Mr. Bonilla's car. Appellant was seated directly behind the driver's seat, and Hunter was seated in the front passenger seat next to Mr. Bonilla. After driving a few blocks, and upon reaching Clementine Street, a gun was placed against the back of Mr. Bonilla's head.

Appellant and Hunter instructed Mr. Bonilla not to move and to "give up everything." They told him they would hurt him and his mother if he did not do as they said. Hunter began to rummage through Mr. Bonilla's pockets and his belongings. Appellant grabbed Mr. Bonilla's shoulder and continued holding the gun to his head. Mr. Bonilla was finally ordered out of the car, and Appellant drove it away.

Mr. Bonilla walked home and told his mother what had happened, then called the police. In his first conversation with police, Mr. Bonilla did not identify Appellant and Hunter by name. He testified that he did not identify them because he was frightened. Detective Larry Aitken testified that on the night of the robbery, Mr. Bonilla was hesitant and seemed guarded when giving his statement.

After speaking to his father, Francisco Bonilla Sr., about the incident, Mr. Bonilla spoke to his uncle, Detective Orlando Ortiz. Mr. Bonilla was shaking, crying, and very upset when he recounted the story to Detective Ortiz. The next day, Mr. Bonilla and his father went to Southwest Detective Division, where Detective Ortiz works, to talk further. On that day, Mr. Bonilla Jr. identified Appellant and his co-defendant, Antwoine Hunter, as the individuals [who] had robbed him.

Detective Ortiz sent information about the robbery to Detective Don Liebsch, who worked at East Detective Division. …Mr. Bonilla came in to be interviewed by Detective Liebsch. He admitted that he had not initially identified the robbers to police out of fear. After Mr. Bonilla gave his statement, an arrest warrant was issued

for Appellant. Later that day, Hunter was seen by Francisco Bonilla Sr. entering Chuckles Bar. Hunter was arrested after being identified by Mr. Bonilla Sr. Appellant was subsequently arrested on December 24, 2012.

Mr. Bonilla's green Pontiac Bonneville was recovered on December 13, 2012, in the possession of Appellant's [half]-brother, Troy Todd.

(Trial Court Opinion, filed March 2, 2015, at 2-4) (citations to record omitted).

On January 16, 2014, a jury convicted Appellant of robbery, robbery of a motor vehicle, and criminal conspiracy. The court sentenced Appellant on April 7, 2014, to an aggregate term of five and one-half (5½) to eleven (11) years' imprisonment. Appellant timely filed a post-sentence motion on April 14, 2014, which the court denied on April 16, 2014. On April 20, 2014, Appellant timely filed a notice of appeal. The court ordered Appellant on May 5, 2014, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 13, 2014, Appellant filed a timely Rule 1925(b) statement, and a supplemental statement on January 20, 2015.

Appellant raises the following issues for our review:

WERE THE CONVICTIONS OF ROBBERY (18 PA.C.S.A. 3701(A)(1)(II)), ROBBERY WITH A MOTOR VEHICLE (18 PA.C.S.A. 3702(A)), AND CRIMINAL CONSPIRACY (18 PA.C.S.A. 903)), NOT SUPPORTED BY SUFFICIENT EVIDENCE? WAS THE EVIDENCE SO CONTRADICTORY AND CONFLICTING THAT THE VERDICT WOULD BE BASED ON SPECULATION, AND A NEW TRIAL WARRANTED?

WERE THE ABOVE REFERENCED CONVICTIONS AGAINST THE WEIGHT OF THE EVIDENCE, PARTICULARLY DUE TO THE CONTRADICTORY AND CONFLICTING NATURE OF THE TESTIMONY?

DID THE ASSISTANT DISTRICT ATTORNEY, IN HIS OPENING AND CLOSING STATEMENTS, MAKE IMPROPER STATEMENTS, REFERENCE MATTERS NOT OF RECORD, GIVE STATEMENTS OF PERSONAL OPINION AND MAKE INFLAMMATORY STATEMENTS, ALL OF WHICH TAINTED THE JURY AND PREJUDICED THE JURY SO THE JURY WAS UNABLE TO RENDER A FAIR VERDICT?

DID [THE COURT] ERR BY NOT CHARGING THE JURY THAT THE IDENTIFICATION OF APPELLANT BY THE ALLEGED VICTIM SHOULD BE RECEIVED WITH CARE AND CAUTION SINCE THE ALLEGED VICTIM INITIALLY SAID HE COULD NOT IDENTIFY APPELLANT?

DID [THE COURT] ERR IN [ITS] CHARGE TO THE JURY WHEN [THE COURT] REFUSED TO CHARGE THE JURY THAT THE INITIAL SIGNED STATEMENT OF THE ALLEGED VICTIM WHERE HE DID NOT IDENTIFY APPELLANT COULD NOT BE USED AS SUBSTANTIVE EVIDENCE?  DID THE SUBSEQUENT CORRECT CHARGE GIVEN SEVERAL HOURS INTO THE JURY DELIBERATION CORRECT THE DEFICIENT CHARGE OR DID THE CONFLICTING CHARGES CONFUSE THE JURY?

(Appellant's Brief at 6-7).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Charles A. Ehrlich, we conclude Appellant's sufficiency and weight of the evidence issues merit no relief.  The trial court's opinion comprehensively discusses and properly disposes of Appellant's questions presented.  (**See** Trial Court Opinion at 4-8) (finding: **(1)** Mr. Bonilla testified that Appellant held gun to Mr. Bonilla's head while Mr. Hunter rifled through Mr. Bonilla's pockets, and

Appellant and Mr. Hunter ordered Mr. Bonilla not to move and threatened him and his mother; gun held to Mr. Bonilla's head placed him in fear of immediate serious injury or death; Mr. Bonilla testified he was afraid of Appellant and Mr. Hunter; detectives who interviewed Mr. Bonilla testified that he was visibly upset when recounting events; evidence was sufficient for jury to find Appellant guilty of robbery; Appellant and Mr. Hunter were in Mr. Bonilla's car with him when they robbed Mr. Bonilla at gunpoint; Appellant and Mr. Hunter ordered Mr. Bonilla out of car, and Appellant moved to driver's seat and drove Mr. Bonilla's vehicle away; evidence was sufficient to find Appellant guilty of robbery of motor vehicle; Appellant and Mr. Hunter jointly robbed Mr. Bonilla at gunpoint; Appellant and Mr. Hunter acted in concert to take Mr. Bonilla's car and money when Appellant held gun to Mr. Bonilla's head while Mr. Hunter went through Mr. Bonilla's belongings; Mr. Bonilla was able to provide eyewitness testimony that identified Appellant and Mr. Hunter as assailants because Mr. Bonilla had previously met Appellant and Mr. Hunter when Mr. Bonilla had given them haircuts at his home; evidence was sufficient to establish agreement between Appellant and Mr. Hunter to rob Mr. Bonilla; **(2)** Mr. Bonilla did not immediately identify Appellant and Mr. Hunter to police; Mr. Bonilla later identified both individuals and explained how he had previously failed to identify his assailants because he was afraid; evidence of Mr. Bonilla's initial and subsequent statements to police was presented at trial; jury had

opportunity to observe any inconsistencies in Mr. Bonilla's statements/testimony and to consider them during deliberation; Appellant's guilty verdicts were not contrary to evidence; jury chose to credit testimony of Mr. Bonilla, his father, his uncle, and investigating detectives; Appellant's guilty verdicts did not shock one's sense of justice).[2] The record supports the court's decision; therefore, we have no reason to disturb it. Accordingly, we dispose of Appellant's sufficiency and weight of the evidence issues on the basis of the court's opinion.

In his third issue, Appellant argues the assistant district attorney ("ADA") made several inflammatory and inappropriate statements during the Commonwealth's opening and closing arguments. Specifically, during the Commonwealth's opening argument, Appellant claims the ADA referred to Appellant's guilt when the ADA stated it was known who had committed the crime because Appellant's half-brother was found in possession of Mr. Bonilla's stolen vehicle. Appellant alleges the court failed to grant defense counsel's motion for a mistrial or issue a curative instruction. Appellant also contends the ADA inappropriately mentioned during the Commonwealth's opening argument that Mr. Bonilla was so afraid after the robbery that he moved from his home and had to bring the case before a grand jury.

---

[2] We note **Commonwealth v. Moore**, 648 A.2d 331, 334 (Pa.Super. 1994), cited on page 8, paragraph 2, line 2 of the court's opinion, has received negative treatment on grounds unrelated to the proposition cited in the court's opinion.

Appellant asserts there was no reason to reference this information, as it was not part of the evidence.

Appellant also argues the ADA inappropriately stated during the Commonwealth's closing argument that Mr. Bonilla and his mother had to move out of the neighborhood where Mr. Bonilla was robbed. Appellant insists this statement raised an inference of threats made when there was no indication of any threats to Mr. Bonilla other than at the time of the incident. Appellant claims the ADA also made a statement of personal opinion during the Commonwealth's closing argument when the ADA stated his grandmother would use her common sense and have no trouble finding Appellant guilty. Appellant alleges the court prevented defense counsel from objecting to the ADA's inflammatory statements until after the closing arguments were concluded, which caused the court to fail to issue any timely curative instructions. Appellant maintains the effect of the ADA's improper statements during the Commonwealth's opening and closing arguments tainted the jury and denied Appellant a fair trial. Appellant concludes this Court should grant him a new trial. We disagree.

Instantly, the court addressed this issue as follows:

> "A prosecutor should not express his personal opinion about a defendant's guilt. The impropriety of a prosecutor's remark does not, however, always require the granting of a new trial." **Commonwealth v. Linder**, 425 A.2d 1126, 1128 (Pa.Super. 1981) (internal citations omitted). Although not allowed to express personal opinion, the prosecutor does have a certain amount of

latitude to craft compelling opening and closing statements:

> In reviewing the prosecutor's comments, we note that a prosecutor must be free to present his or her arguments with logical force and vigor. Reversible error only exists if the prosecutor has "deliberately attempted to destroy the objectivity of the fact finder" such that the "unavoidable effect" of the inappropriate comments would be to create such bias and hostility toward the defendant that the jury could not render a true verdict. This is a decision for the trial court that will not be disturbed absent an abuse of discretion.

*Commonwealth v. Miles*, 545 Pa. 500, 511, 681 A.2d 1295, 1300 (1996) (internal citations and quotations omitted).

In the instant case, the jury was instructed that opening statements do not constitute evidence and should not be considered such. In his opening, the prosecutor was outlining pieces of evidence that he believed would show Appellant had committed the crime in question, and compared the case to a "whodunit" story, when Appellant's attorney objected and moved for a mistrial. Following a ruling denying defense counsel's motion, this court again instructed jurors that they will be instructed to determine for themselves the facts of the case after hearing all of the evidence.

Defense counsel also objected to what he believed were the prosecutor's statements of personal opinion during closing. "[A] closing argument must be based upon evidence in the record or reasonable inferences therefrom." *Commonwealth v. Ligons*, 565 Pa. 417, 430, 773 A.2d 1231, 1238 (2001). While arguments must be based on evidence, "a prosecutor's comments are not evidence. Indeed, the trial court clearly and repeatedly so instructed the jury, which is presumed to follow the court's instructions, on this rule of law." *Commonwealth v. Gibson*, 547 Pa. 71, 95, 688 A.2d 1152, 1164 (1997) (internal citations omitted). Here, the jury was also instructed that closing statements were not to be

considered evidence. This court also explained to the jury that they were not bound by counsel's recollection of evidence or by counsel's perspective in closing statements.

In both opening and closing statements, the prosecutor presented arguments in a persuasive manner, but did not "deliberately attempt to destroy the objectivity" of the jury. Rather, the statements were made as an advocate and did not rise to the level of prosecutorial misconduct. For this reason, these claims are without merit.

(Trial Court Opinion at 8-10) (citations to record omitted). We accept the court's conclusions. Furthermore, the ADA's statements regarding Mr. Bonilla's fear following the robbery were not deliberate attempts to destroy the objectivity of the fact finder, but to highlight the evidence presented at trial. *See Miles, supra*. Additionally, the ADA's reference to his own grandmother was merely rhetorical flair used to argue the evidence proved Appellant's guilt. *See Commonwealth v. Sampson*, 900 A.2d 887, 891 (Pa.Super. 2006) (stating: "Prosecutors are entitled to use rhetorical flair to make their point"). Therefore, the ADA's statements did not "create such bias and hostility toward [Appellant] that the jury could not render a true verdict." *See Miles, supra*. Accordingly, Appellant's issue merits no relief.

In his fourth issue, Appellant argues he was entitled to a jury instruction pursuant to *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), that Mr. Bonilla's identification of Appellant should be treated with care and caution, as Mr. Bonilla initially failed to identify Appellant. Appellant contends that on the night of the robbery, Mr. Bonilla told police he was unable to identify his assailants, but over the next few days, Mr.

- 9 -

Bonilla identified Appellant as one of the individuals who robbed him. Appellant alleges defense counsel objected when the court refused to issue this instruction. Appellant maintains the court's lack of a "care and caution" instruction could have affected the jury's verdict. Appellant concludes this Court should grant him a new trial. We disagree.

"There is no requirement for the trial judge to instruct the jury pursuant to every request made to the court." **Commonwealth v. Newman**, 555 A.2d 151, 158-59 (Pa.Super. 1989), *appeal denied*, 540 Pa. 580, 655 A.2d 512 (1995). "In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law." **Commonwealth v. DeMarco**, 570 Pa. 263, 271, 809 A.2d 256, 260-61 (2002).

A jury charge is erroneous only if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse, rather than clarify, a material issue. **Commonwealth v. Baker**, 963 A.2d 495, 507 (Pa.Super. 2008), *appeal denied*, 606 Pa. 644, 992 A.2d 885 (2010) (citation omitted).

> A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Id.* Moreover,

> The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law. A verdict will not be set aside if the instructions of the trial

court, taken as a whole, and in context, accurately set forth the applicable law.

*Commonwealth v. Jones*, 858 A.2d 1198, 1201 (Pa.Super. 2004). "Jury instructions must be supported by the evidence of record as instructions regarding matters that are not before the court serve no purpose but to confuse the jury." *Commonwealth v. Bruce*, 717 A.2d 1033, 1037 (Pa.Super. 1998), *appeal denied*, 568 Pa. 643, 794 A.2d 359 (1999).

"A *Kloiber* charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." *Commonwealth v. Reid*, ___ Pa. ___, 99 A.3d 427, 448 (2014) (citations omitted). Nevertheless, "[w]hen the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant[.]" *Id.* (citation and internal quotation marks omitted).

> [T]he need for a *Kloiber* charge focuses on the **ability** of a witness to identify the defendant. Our Commonwealth's decisional law has long held that prior inconsistent statements based upon fear of endangerment do not equate to a prior failure of ability to identify a defendant. *See Commonwealth v. Fisher*, 572 Pa. 105, 813 A.2d 761, 770–71 (2002)…(providing no relief to PCRA petitioner based on conclusions *Kloiber* instruction litigated on direct appeal where witnesses, who knew defendant prior to shooting, failed to identify defendant at pre-trial line-up due to fear that identifying him would endanger her and her family); *Commonwealth v. Lee*, 401 Pa.Super. 591, 585 A.2d 1084, 1087 (1991) (finding *Kloiber* instruction inappropriate where fear of identifying

- 11 -

defendant cannot be equated to failure to make identification)[.]

*Id.* at 449 (emphasis in original).

Instantly, in the early morning hours of December 8, 2012, Mr. Bonilla reported a robbery to the police. (N.T. Trial, 1/14/14, at 70). When a police officer arrived at Mr. Bonilla's home, he told the officer that he did not know the two individuals who had robbed him. *Id.* at 71. Several days later, however, Mr. Bonilla identified Appellant and Mr. Hunter as the assailants and picked them out of a photo array. *Id.* at 74. When questioned at trial as to why Mr. Bonilla did not identify Appellant and Mr. Hunter on the night of the robbery, Mr. Bonilla testified that he was afraid because the defendants knew where Mr. Bonilla and his mother lived. *Id.* at 69, 70-71. Thus, Mr. Bonilla's initial failure to identify Appellant arose from a fear of endangerment and did not equate to any inability to identify Appellant as one of the assailants. *See Reid, supra* at 449. Furthermore, Mr. Bonilla knew Appellant prior to the robbery, which provided an independent basis for Mr. Bonilla's in-court identification of Appellant. (N.T. Trial, 1/14/14, at 53). *See Reid, supra* at 448. Therefore, the court did not abuse its discretion in failing to give a *Kloiber* "care and caution" instruction to the jury. *See DeMarco, supra*. Accordingly, Appellant's issue merits no relief.

In his final issue, Appellant claims Mr. Bonilla's statement to the police immediately following the robbery was that two unknown men robbed Mr. Bonilla after he left the bar and was walking to his car. Appellant alleges Mr.

Bonilla told police several days later that he was with Appellant and Mr. Hunter on the night of the robbery, they asked Mr. Bonilla for a ride home, and they robbed him on the way. Appellant contends the court improperly instructed the jury that Mr. Bonilla's first statement could be used only for impeachment purposes, to which defense counsel objected. Appellant avers that several hours after the jury began deliberating, the court corrected its earlier charge and reinstructed the jury that Mr. Bonilla's initial police statement could be used as both impeachment and substantive evidence. Appellant maintains the court's original charge tainted the jury and was not harmless error because we do not know how the jury treated the conflicting jury instructions. Appellant concludes this Court should grant him a new trial. We disagree.

Appellate review of a jury charge is guided by the following principles:

> We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy…rather we evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision. We must review the charge as a whole. Error cannot be predicated on isolated excerpts of the charge…it is the general effect of the charge that controls. An instruction will be upheld if it clearly, adequately and accurately reflects the law. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law. A verdict will not be set aside if the instructions of the trial court, taken as a whole, and in context, accurately set forth the applicable law.

*Jones, supra* at 1200-01 (internal citations omitted).

In the present case, the court initially instructed the jury on the use of

Mr. Bonilla's first statement as follows:

> You've heard evidence that a witness, Francisco Bonilla, Jr., made a statement on an earlier occasion that was inconsistent with his present testimony. **You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement.** When you judge the credibility and weight of testimony, you are deciding whether you believe the testimony and how important you think it is.

(N.T. Trial, 1/16/14, at 83) (emphasis added).  Appellant's defense counsel

objected and argued that Mr. Bonilla's first statement to police could be used

for impeachment purposes as well as for proof of the truth of the matter

asserted.  *Id.* at 90.  Thereafter, during deliberations, the court reinstructed

the jury on the use of Mr. Bonilla's first statement to the police:

> You've heard evidence that a witness, Francisco Bonilla, Jr., made a statement on an earlier occasion that was inconsistent with his present testimony or testimony in court. **You may, if you choose, regard this evidence as proof of the truth of anything that the witness said in the earlier statement. You may also consider this evidence to help you judge the credibility and weight of the testimony given by the witness at this trial.** When you judge the credibility and weight of testimony, you are deciding whether you believe the testimony and how important you think it is.

*Id.* at 96-97 (emphasis added).

In its opinion, the court addressed Appellant's claim as follows:

> The law regarding prior inconsistent statements is established as follows:

- 14 -

> [A] prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.

*Commonwealth v. Lively*, 530 Pa. 464, 471, 610 A.2d 7, 10 (1992). Mr. Bonilla signed and adopted this statement, therefore meeting the requirements set out in *Lively*. This court[,] therefore[,] acknowledges that this evidence could have been considered as substantive evidence. Any error that resulted was harmless, however, and does not merit a new trial.

The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. *Commonwealth v. Allshouse*, 614 Pa. 229, 261, 36 A.3d 163, 182 (2012)…. Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one. *Id.* …[T]he admissibility of evidence rests within the sound discretion of the trial court, and its decision will be reversed only upon a showing that it abused its discretion. *Commonwealth v. Chmiel*, 585 Pa. 547, 581-82, 889 A.2d 501, 521 (2005) (citing *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004)). Further, an erroneous ruling by a trial court on an evidentiary issue does not require the appellate court to grant relief where the error was harmless. *Id.* (citing *Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166, 193 (1999)). Prior appellate rulings on similar facts stand for the proposition that any error here was harmless:

> In *Commonwealth v. Brady*, our Supreme Court held that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and who is available for cross-examination may be used as substantive evidence of the truth of the matter asserted therein. In

- 15 -

*Commonwealth v. Blount*, [the Superior] Court held that *Brady* did not mandate a specific jury instruction that prior inconsistent statements could be used both for impeachment purposes and as substantive evidence—instead, it was enough that the trial court did not instruct the jury that the statements could only be considered for impeachment purposes. Here, unlike *Blount*, the trial court instructed the jury that the witnesses' prior inconsistent statements could only be used to judge their credibility and not as substantive evidence of truth of the matter asserted therein. This instruction clearly violates *Brady*, and thus, we conclude that the lower court erred in refusing to give the instruction appellant requested.

*Commonwealth v. Bird*, 597 A.2d 1169, 1170-71 (Pa.Super. 1991) (internal citations omitted). As in *Bird*, this court instructed the jury that Mr. Bonilla's prior inconsistent statement to police could only be used to determine credibility, and not as substantive evidence. While the Court in *Bird* determined this was error, it was found to be harmless:

The next question we must determine is whether this error is constitutionally harmless. In *Blount*, we opined, albeit in dicta, that even if a trial court errs by instructing, the jury to consider a prior inconsistent statement only for impeachment purposes, the error can be harmless. For this proposition, we cited to *Commonwealth v. McMillan*, in which the trial court had specifically instructed the jury to consider prior inconsistent statements for credibility purposes only. Despite the error in the instruction, the panel in *McMillan* stated that the instruction did not prejudice the defendant because the witness admitted making the prior inconsistent statement, he explained that he made the statement because he feared the defendant, and the fact that the prior inconsistent statement was made was uncontested. Thus, the issue properly posed for the jury was whether the witness's in-court explanation for the statement was credible, and not whether the out-of-court statement had been made.

*Id.* at 1171 (internal citations omitted).

Here, [Mr. Bonilla] also admitted to making the prior inconsistent statement out of fear. There was no question that this statement was made, and Mr. Bonilla was available for cross-examination on the issue as well. The jury had only to determine the witness's credibility, and not whether such a previous statement was made. Under the same circumstances, the Superior Court has held that such error was harmless.

In addition to the foregoing, a traditional harmless error analysis compels the same conclusion. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. [**Chmiel, supra**] (quoting **Commonwealth v. Robinson**, 554 Pa. 293, 304, 721 A.2d 344, 350 (1998)). A finding of any of these three factors will support a conclusion of harmless error. **Id.** at [594], 889 A.2d at 529.

If the Court finds that the aforementioned jury instruction was given in error, that error was harmless. Indeed, it seems likely that both the first and third factors are present here. First, the fact that Mr. Bonilla gave an earlier statement to the police in which he did not identify either defendant was presented to the jury. And Mr. Bonilla was available for cross-examination by the defense on this point. Moreover, Appellant and his co-defendant were given ample opportunity to address these inconsistent statements at trial and present them to the jury. Therefore, any prejudice created in not admitting the prior statements as substantive evidence was *de minimis*.

Even still, the strongest factor here is the third. Francisco Bonilla, the complainant, spoke to detectives a second time to correct his initial statement. He stated that he was

in fear due to threats from Appellant and Hunter, and that was why he had not initially identified them. He subsequently identified both defendants consistently. Both men were well known to Mr. Bonilla prior to the robbery. Shortly after the robbery, Mr. Bonilla's car was located in the possession of Appellant's [half-brother]. Evidence of guilt was so overwhelming that any error in the jury instruction was harmless.

(Trial Court Opinion at 16-20) (citations to record omitted). We accept the court's reasoning. Here, the court corrected its instruction during deliberations and properly charged the jury that Mr. Bonilla's initial police statement could also be used for the truth of the matter asserted in it. Thus, the court's initial error was rendered harmless by the modified jury instruction. **See Chmiel, supra** at 581-82, 889 A.2d at 521. Furthermore, defense counsel failed to object to the court's corrected jury instruction; therefore, any claim regarding the court's modified jury charge is waived. **See Commonwealth v. May**, 584 Pa. 640, 887 A.2d 750 (2005), *cert. denied*, 549 U.S. 832, 127 S.Ct. 58, 166 L.Ed.2d 54 (2006) (reiterating absence of specific and contemporaneous objection waives issue on appeal). Therefore, Appellant's final claim merits no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

Commonwealth of Pennsylvania     :     CP-51-CR-0001491-2013

    :

v.

    :

Rashad Bonaparte     :     SUPERIOR COURT
    NO. 1388 EDA 2014

**FILED**

MAR – 2 2015

Criminal Appeals Unit
First Judicial District of PA

OPINION

Ehrlich, J.

Rashad Bonaparte, hereinafter Appellant, was found guilty of robbery, robbery of a motor vehicle, and criminal conspiracy after a jury trial on January 16, 2014.[1] Appellant was tried with co-defendant Antwoine Hunter.[2]

The charges stem from an armed robbery and carjacking in the Port Richmond section of Philadelphia on December 8, 2012. Appellant was sentenced on April 7, 2014, to an aggregate term of five and one-half to eleven years incarceration. A timely appeal followed.

Instantly, Appellant avers eight points of error:

CP-51-CR-0001491-2013 Comm. v. Bonaparte, Rashad
Opinion



7264493241

I.     The evidence was insufficient to support the verdict.

II.     The verdict was against the weight of the evidence.

III.     The assistant district attorney ("ADA") erred during closing arguments when making statements of personal opinion and inflammatory statements. The trial court erred in not granting a new trial.

IV.     The trial court erred in giving the instruction on reasonable doubt.

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3702(a), and 903(c), respectively.

[2] Docketed at CP-51-CR-0001162-2013 and 2496 EDA 2014.

V.  The trial court erred in not giving a charge that if a factual inference could go either way, it must go to the defense.

VI.  The trial court erred in not giving instruction that the identification of Appellant should be taken with care and caution.

VII.  In the opening statement, the ADA also gave numerous statements of personal opinion and the trial court erred in not granting a mistrial.

VIII.  The trial court erred in charging the jury that the earlier signed statement of Mr. Bonilla, in which he did not identify either defendant, could not be used as substantive evidence.

Appellant's Pa.R.A.P. 1925(b) Statement.

As will be discussed below, these claims are without merit. Any error that did occur was harmless. Accordingly, no relief is due.

## The Evidence

Francisco Bonilla, the complainant, knew Appellant and Antwoine Hunter ("co-defendant") from living in the same neighborhood. Notes of Testimony ("N.T.") 01/14/2014, at 52–53. On several occasions, he had given both men haircuts in his basement. *Id.* at 60.

On the night of December 7 and into the early morning hours of December 8, 2012, Francisco Bonilla was at Chuckles Bar on the corner of Frankford Avenue and Clearfield Street. *Id.* at 57. He had been playing pool for money and won about $100 that evening. *Id.* at 58–59. At 2 a.m., when the bar closed, Mr. Bonilla exited and spoke to Appellant and Hunter, who had also been at the bar. *Id.* at 61. Mr. Bonilla owned a green 1998 Pontiac Bonneville, which he had parked outside. *Id.* at 64. Appellant and Hunter asked for a ride, and all three men entered Mr. Bonilla's car. *Id.* Appellant was seated directly behind the driver's seat, and Hunter was seated in the front passenger seat next to Mr. Bonilla. *Id.* at 66. After driving a few blocks, and

-2-

upon reaching Clementine Street, a gun was placed against the back of Mr. Bonilla's head. *Id.* at 64.

Appellant and Hunter instructed Mr. Bonilla not to move and to "give up everything." *Id.* at 67. They told him they would hurt him and his mother if he did not do as they said. *Id.* at 69. Hunter began to rummage through Mr. Bonilla's pockets and his belongings. *Id.* Appellant grabbed Mr. Bonilla's shoulder and continued holding the gun to his head. *Id.* at 68. Mr. Bonilla was finally ordered out of the car, and Appellant drove it away. *Id.* at 70.

Mr. Bonilla walked home and told his mother what had happened, then called the police. *Id.* In his first conversation with police, Mr. Bonilla did not identify Appellant and Hunter by name. *Id.* at 71. He testified that he did not identify them because he was frightened. *Id.* Detective Larry Aitken testified that on the night of the robbery, Mr. Bonilla was hesitant and seemed guarded when giving his statement. N.T., 01/15/2014, at 36.

After speaking to his father, Francisco Bonilla Sr., about the incident, Mr. Bonilla spoke to his uncle, Detective Orlando Ortiz. N.T., 01/14/2014, at 137. Mr. Bonilla was shaking, crying, and very upset when he recounted the story to Detective Ortiz. N.T., 01/15/2014, at 65. The next day, Mr. Bonilla and his father went to Southwest Detective Division, where Detective Ortiz works, to talk further. *Id.* at 60. On that day, Mr. Bonilla Jr. identified Appellant and his co-defendant, Antwoine Hunter, as the individuals that had robbed him. *Id.* at 61–62.

Detective Ortiz sent information about the robbery to Detective Don Liebsch, who worked at East Detective Division. *Id.* at 6. Mr. Bonilla came in to be interviewed by Detective Liebsch. *Id.* at 7. He admitted that he had not initially identified the robbers to police out of fear. *Id.* at 15. After Mr. Bonilla gave his statement, an arrest warrant was issued for Appellant. *Id.* at 9–10. Later that day, Hunter was seen by Francisco Bonilla Sr.

- 3 -

entering Chuckles Bar. N.T., 01/14/2014, at 138–39. Hunter was arrested after being identified by Mr. Bonilla Sr. *Id.* at 139. Appellant was subsequently arrested on December 24, 2012.

Mr. Bonilla's green Pontiac Bonneville was recovered on December 13, 2012, in the possession of Appellant's half-brother, Troy Todd. N.T., 01/15/2014, at 113–14.

## Discussion

### *Sufficiency of the Evidence*

Appellant's first contention on appeal is that the evidence was insufficient to sustain his convictions for robbery, robbery of a motor vehicle, and conspiracy. The standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Thompson*, 93 A.3d 478, 489 (Pa. Super. 2014) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000) (internal citations omitted)).

A conviction may be sustained on wholly circumstantial evidence, and the trier-of-fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. 2010) (quoting *Commonwealth v. Galvin*, 603 Pa. 625, 635, 985 A.2d 783, 789 (2009)). Any doubts as to a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007).

Appellant was convicted of robbery, which is defined, in relevant part, as follows:

§ 3701. Robbery

(a) Offense Defined. --

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury.

18 Pa.C.S.A. § 3701.

In the instant case, Mr. Bonilla testified that Appellant held a gun to his head while his co-defendant rifled through Mr. Bonilla's pockets and belongings. His assailants ordered Mr. Bonilla not to move, and threatened to hurt him and his mother. Mr. Bonilla testified that he was afraid of Appellant and his co-defendant, and detectives who interviewed him found him to be visibly upset when recounting the events. Not only was Mr. Bonilla threatened, but the gun held to his head put him in fear of immediate serious injury or death. This evidence was sufficient for the jury to conclude that Appellant was guilty of robbery.

Appellant was also convicted of robbery of a motor vehicle, which is defined by statute:

§ 3702. Robbery of a Motor Vehicle

(a) Offense defined. -- A person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle.

18 Pa.C.S.A. § 3702.

In the instant case, Appellant and his co-defendant were in Mr. Bonilla's car with him when they held him at gunpoint. They ordered him to get out of the car, and Appellant got into the driver's seat and drove the vehicle away. Mr. Bonilla's testimony was sufficient for a jury to find Appellant guilty of the crime of robbery of a motor vehicle.

Finally, Appellant was convicted of conspiracy. The offense of conspiracy is defined by statute as follows:

- 5 -

§ 903. Criminal Conspiracy

(a) Definition of conspiracy. -- A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

> [T]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant: (1) entered into an agreement to commit or aid in the unlawful act with another person or persons, (2) with a share criminal intent, and (3) an overt act was done in furtherance of the conspiracy.

*Commonwealth v. Murphy*, 795 A.2d 1025,1037-38 (Pa. Super. 2002).

Furthermore, "[w]hile the Commonwealth is not required to prove a written or express agreement, a tacit agreement must be established by reasonable inferences arising from the facts and circumstances." *Commonwealth v. Savage*, 566 A.2d 272, 276 (Pa. Super. 1989). Therefore, an agreement may be inferred between co-conspirators from the facts of the case.

In the instant case, Appellant and his co-defendant jointly robbed Mr. Bonilla at gunpoint. While Appellant held a gun to Mr. Bonilla's head, his co-defendant, Antwoine Hunter, went through Mr. Bonilla's belongings, stealing his money. The two acted in concert to take Mr. Bonilla's car and money. Mr. Bonilla testified to their actions, and that evidence was sufficient to establish an agreement between the two men to rob Mr. Bonilla.

"In evaluating the sufficiency of the evidence in a criminal case, the test to be employed is whether the finder of fact could reasonably have found that all elements of the crime charged had been proved beyond a reasonable doubt." *Commonwealth v. Richbourg*, 394 A.2d 1007,

- 6 -

1010 (Pa. Super. 1978). Here, eyewitness testimony from the complainant identified Appellant and his co-defendant as the men responsible for robbing him. He had met them both before, and even given them haircuts at his home. Bonilla testified that they acted together to rob him and take his car. Given that testimony, it was reasonable for the jury to conclude that Appellant was guilty of the crimes charged.

## Weight of the Evidence

Appellant next contends that the verdict was against the weight of the evidence. This claim should fail, because the standard of review for evaluating a weight-of-the-evidence claim is well established and very narrow. *Commonwealth v. Champney*, 574 Pa. 435, 443, 832 A.2d 403, 409 (2003). Determining the weight of the evidence is reserved exclusively for the finder of fact. *Id.* at 408. Again, the finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Id.* Thus, an appellate court can only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. *Id.* *See also Commonwealth v. Johnson*, 542 Pa. 384, 394, 668 A.2d 97, 101 (1995). Because the trial judge is in the best position to view the evidence presented, an appellate court will give that judge the utmost consideration when reviewing the court's determination on whether the verdict is against the weight of the evidence. *Commonwealth v. Morgan*, 913 A.2d 906, 909 (Pa. Super. 2006). A "true weight-of-the-evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006). Moreover, a new trial should not be granted in a criminal prosecution because of a mere conflict in the testimony or because the judge, on the same facts, may have arrived at a different conclusion. *Commonwealth v. Widmer*, 560 Pa. 308, 319-20, 744 A.2d 745, 752 (2000).

- 7 -

In the instant case, Appellant and his co-defendant were not immediately identified by the complainant to police. He later identified both individuals, and explained that his earlier silence was due to fear of his assailants. Evidence of both his initial and subsequent statements to police was presented at trial. The jury had the opportunity to observe any inconsistencies in Mr. Bonilla's testimony and was able to take this into account when deliberating. The fact that Appellant and Hunter were found guilty after all the evidence was presented was not contrary to the evidence or shocking to the conscious.

The jury is always free to determine which testimony to believe and how much weight to give testimony. *See Commonwealth v. Moore*, 648 A.2d 331, 334 (Pa. Super. 1994). Here, the jury chose to credit the testimony of the complainant, his father and uncle, and the detectives investigating the case. The fact that the jury found Appellant and his co-defendant guilty after weighing all of the evidence does not shock one's sense of justice.

For the foregoing reasons, Appellant's claim that the verdict was against the weight of the evidence must also fail.

*Opening Statement and Closing Argument*

Appellant also claims the ADA made improper statements in both his opening and closing, such as personal opinion and inflammatory comments.

"A prosecutor should not express his personal opinion about a defendant's guilt. The impropriety of a prosecutor's remark does not, however, always require the granting of a new trial." *Commonwealth v. Linder*, 425 A.2d 1126, 1128 (Pa. Super. 1981) (internal citations omitted). Although not allowed to express personal opinion, the prosecutor does have a certain amount of latitude to craft compelling opening and closing statements:

> In reviewing the prosecutor's comments, we note that a prosecutor must be free to
> present his or her arguments with logical force and vigor. Reversible error only

- 8 -

exists if the prosecutor has "deliberately attempted to destroy the objectivity of the fact finder" such that the "unavoidable effect" of the inappropriate comments would be to create such bias and hostility toward the defendant that the jury could not render a true verdict. This is a decision for the trial court that will not be disturbed absent an abuse of discretion.

*Commonwealth v. Miles*, 545 Pa. 500, 511, 681 A.2d 1295, 1300 (1996) (internal citations and quotations omitted).

In the instant case, the jury was instructed that opening statements do not constitute evidence and should not be considered such. N.T., 01/14/2014, at 28. In his opening, the prosecutor was outlining pieces of evidence that he believed would show Appellant had committed the crime in question, and compared the case to a "whodunit" story, when Appellant's attorney objected and moved for a mistrial. *Id.* at 36. Following a ruling denying defense counsel's motion, this court again instructed jurors that they will be instructed to determine for themselves the facts of the case after hearing all of the evidence. *Id.* at 36–37.

Defense counsel also objected to what he believed were the prosecutor's statements of personal opinion during closing. "[A] closing argument must be based upon evidence in the record or reasonable inferences therefrom." *Commonwealth v. Ligons*, 565 Pa. 417, 430, 773 A.2d 1231, 1238 (2001). While arguments must be based on evidence, "a prosecutor's comments are not evidence. Indeed, the trial court clearly and repeatedly so instructed the jury, which is presumed to follow the court's instructions, on this rule of law." *Commonwealth v. Gibson*, 547 Pa. 71, 95, 688 A.2d 1152, 1164 (1997) (internal citations omitted). Here, the jury was also instructed that closing statements were not to be considered evidence. N.T., 01/16/2014, at 7. This court also explained to the jury that they were not bound by counsel's recollection of evidence or by counsel's perspective in closing statements. *Id.*

In both opening and closing statements, the prosecutor presented arguments in a persuasive manner, but did not "deliberately attempt to destroy the objectivity" of the jury.

- 9 -

Rather, the statements were made as an advocate and did not rise to the level of prosecutorial misconduct. For this reason, these claims are without merit.

*Reasonable Doubt Instructions*

Appellant also contends that this court erred when giving instructions on reasonable doubt. This claim is without merit, as the instructions were proper.

"Pennsylvania's Standard Jury Instruction for reasonable doubt provides in pertinent part that: '[a] reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs.'" *Commonwealth v. Jones*, 590 Pa. 202, 234, 912 A.2d 268, 287 (2006) (plurality), *cited with approval in Commonwealth v. Cook*, 597 Pa. 572, 633, 952 A.2d 594, 630 (2008)).

At the close of trial, the jury was given the second alternative instructions for reasonable doubt, burden of proof, and presumption of innocence. Pa. SSJI (Crim), §7.01 (2014). This court, in relevant part, stated:

> [T]o find the defendant guilty beyond a reasonable doubt, you must be convinced of his guilt to the same degree that you would be convinced about a matter of importance in your own life in which you would act with confidence and without restraint and hesitation."

N.T., 01/16/2014, at 68–69.

This phrasing is taken directly from part four of the second alternative instructions, in accordance with the standard suggested instructions. Although Appellant disagreed with this court's choice, trial courts have great discretion in phrasing jury instructions so long as the law is clearly, adequately, and accurately presented to the jury. *Commonwealth v. Eichinger*, 915 A.2d 1122, 1138 (Pa. 2007). Here, this court accurately conveyed the legal standard of reasonable doubt to the jury. Therefore, no error occurred.

- 10 -

*Factual Inference Instruction*

Next, Appellant asserts that the trial court erred in not instructing the jury in the manner requested by Appellant's counsel. Specifically, Appellant stated "Judge Ehrlich erred in not giving a charge that if a factual inference could go either way, it must go to the defense." Appellant's Pa.R.A.P. 1925(b) Statement ("Statement") at ¶ 4.

It is well established that trial courts have discretion to formulate jury instructions:

> A trial court has broad discretion in phrasing its instructions to the jury and can choose its own wording so long as the law is clearly, adequately and accurately presented to the jury for consideration. Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. In reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue.

*Commonwealth v. King*, 554 Pa. 331, 362, 721 A.2d 763, 778–79 (1998) (internal citations omitted).

In the instant case, this court gave the following instructions on reasonable doubt and burden of proof, from the standard suggested instructions:

> 1. At the beginning of the trial, I told you that a fundamental principle of our law is that you must presume the defendant innocent. This meant that you were to accept that the mere fact that a defendant is charged with a crime does not mean that he or she is guilty of it. The defendant has begun the case with a clean slate. He has no obligation to prove his innocence.

> 2. It is the Commonwealth that bears the burden of convincing you that the defendant, who is presumed innocent as the trial began and progressed, is guilty of the crimes charged. To succeed in its effort, the Commonwealth must convince you that, based on a fair consideration of all the evidence that has been offered, each element of the offense[s] charged has been proven beyond a reasonable doubt.

> 3. To prove the defendant guilty beyond a reasonable doubt means that the Commonwealth must convince you of his guilt to a level of certainty that the law requires before a verdict of guilty may be returned.

> 4. A guilty verdict cannot be based upon a suspicion of guilt. Therefore, it is not enough that the Commonwealth's evidence merely casts doubt upon the innocence of the defendant or that it leaves you believing simply that he is probably guilty.

Rather, to find the defendant guilty beyond a reasonable doubt, you must be convinced of [his] [her] guilt to the same degree you would be convinced about a matter of importance in your own life in which you would act with confidence and without restraint or hesitation.

5. Understand that in making decisions of importance in our own lives, we can never act with mathematical certainty. Also, we must recognize that sometimes, simply out of fear of making those important decisions, we may imagine doubts that are based on virtually anything. It is important that we make sure that doubts that we allow to affect our decisions are only those that are based upon facts and reason.

6. The same considerations apply here.

7. In addition, your decision should not be based upon sympathy for any person or any concern for future consequences of your verdict, such as what the penalty might be if you find the defendant guilty. The simple but important question you must decide is whether the evidence convinces you of the defendant's guilt to the degree that if this were a matter of importance in your own life, you would act on that matter confidently, without hesitation or restraint.

8. Your verdict must arise from your conscientious review of the facts and the law, the application of your good common sense, and your recognition of the importance of the oath you took as a juror to try this case fairly, impartially, and honorably.

9. If after this consideration, you find that the Commonwealth has convinced you that the defendant is guilty beyond a reasonable doubt, you should find him guilty. Otherwise, you must find the defendant not guilty.

N.T., 01/16/2014, 67–70; Pa. SSJI (Crim), §7.01 (2014).

This court found that the reasonable doubt charge given to the jury adequately encompassed the factual inference charge Appellant requested. "So long as the instructions given adequately reflect the law," there will be no abuse of discretion. *Gibson* 547 Pa. at 91, 688 A.2d at 1162. The charge given accurately explained the legal standard to the jury. Therefore, no error occurred.

*Witness Identification Instruction*

Appellant also claims the trial court erred in giving jury instructions concerning witness identification of Appellant. Appellant asserts that the trial court should have given instruction "that the identification of Mr. Bonaparte should be taken with care and caution." Statement at ¶ 5.

As mentioned *supra*, the trial court maintains broad discretion when formulating jury instructions, so long as the law is fairly and adequately represented. *King* 554 Pa. at 362, 751 A.2d at 778–79; *Gibson* 547 Pa. at 91, 688 A.2d at 1162.

Instantly, this court gave instructions on the inconsistent statements of Mr. Bonilla regarding the identification of the two co-defendants.

> THE COURT: If you conclude that one of the witnesses testified falsely and did so intentionally about any fact which is necessary to your decision in this case, then for that reason alone you may, if you wish, disregard everything that witness said. However, you are not required to disregard everything the witness said for this reason. It is entirely possible that the witness testified falsely and intentionally so in one respect but truthfully about everything else. If you find that to be the situation, then you may accept that part of his or her testimony which you find to be truthful and which you believe and you may reject that part which you find to be false and not worth of belief.
>
> &ast; &ast; &ast;
>
> [I]t is up to you to decide which testimony, if any, to believe and which to reject as not true or inaccurate.

N.T., 01/16/2014, at 71–72.

The jury was given instructions in keeping with the law stated in the relevant standard suggested jury instructions:

> 1. Where there is a conflict in the testimony, the jury has the duty of deciding which testimony to believe. But you should first try to reconcile, that is, fit together, any conflicts in the testimony if you can fairly do so.
>
> 2. Discrepancies and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. Remember that

two or more persons witnessing an incident may see or hear it happen differently; also, it is not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened.

3. If you cannot reconcile a conflict in the testimony, it is up to you to decide which testimony [if any] to believe and which to reject as untrue or inaccurate.

4. In making this decision, consider whether the conflict involves a matter of importance or merely some detail and whether the conflict is brought about by an innocent mistake or by an intentional falsehood. You should also keep in mind the other factors already discussed, which go into deciding whether or not to believe a witness.

5. In deciding which of conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on either side. You may find that the testimony of a few witnesses, even of just one witness, is more believable than the opposing testimony of a greater number of witnesses. On the other hand, you should also consider the extent to which conflicting testimony is supported by other evidence.

Pa. SSJI (Crim), §4.09 (2005).

These instructions properly addressed the issue of Mr. Bonilla's inconsistent statements, which were also handled during trial when Mr. Bonilla testified and was subject to cross-examination. This adequately addressed the request made by defense counsel at trial regarding the identification of Appellant. Therefore, the instructions given were proper and no error occurred.

*Prior Inconsistent Statement Jury Instruction*

Finally, Appellant has asserted that the trial court erred in its instructions regarding Francisco Bonilla's initial statements to police, in which he did not identify Appellant or his co-defendant.

THE COURT: You've heard evidence that a witness, Francisco Bonilla, Jr., made a statement on an earlier occasion that was inconsistent with his present testimony. You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement. When you judge the credibility and

- 14 -

weight of testimony, you are deciding whether you believe the testimony and how important you think it is. In his testimony, Francisco Bonilla, Jr., has identified the defendants as the persons who committed the crimes. In evaluating his testimony, in addition to the other instructions I have provided to you for judging the testimony of witnesses, you should consider the additional following factors:

Did the witness have a good opportunity to observe the perpetrator of the offense? Was there sufficient lighting for him to make his observations? Was he close enough to the individual to note his facial and other physical characteristics as well as any clothing he was wearing? Had he made a prior identification of the defendant as the perpetrator of these crimes at any other proceeding? Was his identification positive or was it qualified by any hed ging or inconsistencies? During the course of this case, did the witness identify anyone else as the perpetrator?

In considering whether or not to accept the testimony of Francisco Bonilla, Jr., you should consider all the circumstances under which the identifications were made. Furthermore, you should consider all evidence relative to the question of who committed the crime including the testimony of any witness from which identity or non-identity of the perpetrators of the crimes may be inferred. You cannot find the defendant guilty unless you're satisfied beyond a reasonable doubt by all the evidence, direct and circumstantial, not only that a crime was committed but that it was the defendant who committed the crime.

N.T., 01/16/2014, at 83–84.

Appellant objected to the instruction that the jury could only consider this evidence for determining the witness's credibility and requested this prior statement be admitted as substantive evidence. Appellant's attorney, as well as the attorney for Antwoine Hunter, brought this timely objection forward at trial:

MR. STRETTON [Attorney for Appellant]: As to your instructions, Your Honor, at the very, toward the very tail end of your instructions, you gave the impeachment instruction for inconsistent statements and how it could be used but you didn't and you specifically said you can't use it for the proof of the truth of a matter. It was my position the second statement of Mr. Bonilla where he signed it indicating he couldn't identify the individuals could be used not only for impeachment but as substantive evidence that he couldn't identify, and I ask that you correct that.

\* \* \*

- 15 -

MR. GEARY [Attorney for Hunter]: Your Honor, just one thing that I wanted to point out, which Mr. Stretton did. But the substantive evidence, the signed statement, since it is signed, which is different from the 48, I believe could be, since he affirmed it and he then contradicted it, that the jury should know that, that it could be used as substantive evidence since he affirmed the statement and the affirmed statement contradicts his 48, obviously, and then his second signed statement.

THE COURT: Okay. Well, in this case I'm not going to add that to it because he explained that who he identified, why he didn't identify people before, and in this situation there are inconsistent statements which the jury can use to decide credibility of the complainant. So I'm not going to give that one sentence, not in a situation of trying to use the prior statement, the Commonwealth using the prior statement for substantive evidence.

MR. STRETTON: Your Honor, I would ask you to, I only like trying cases once. I think by not doing it you're creating a reversible error, which you could have so easily corrected.

THE COURT: I don't think so. But go ahead, Mr. Thomson.

N.T., 01/16/2014, at 91–94.

The law regarding prior inconsistent statements is established as follows:

[A] prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.

*Commonwealth v. Lively*, 530 Pa. 464, 471, 610 A.2d 7, 10 (1992). Mr. Bonilla signed and adopted this statement, therefore meeting the requirements set out in *Lively*. N.T., 01/15/2014, at 38–40. This court therefore acknowledges that this evidence could have been considered as substantive evidence. Any error that resulted was harmless, however, and does not merit a new trial.

The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. *Commonwealth v. Allshouse*, 614 Pa. 229, 261, 36 A.3d 163, 182 (2012).

- 16 -

Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one. *Id.* As noted above, the admissibility of evidence rests within the sound discretion of the trial court, and its decision will be reversed only upon a showing that it abused its discretion. *Commonwealth v. Chmiel*, 585 Pa. 547, 581–82, 889 A.2d 501, 521 (2005) (citing *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004)). Further, an erroneous ruling by a trial court on an evidentiary issue does not require the appellate court to grant relief where the error was harmless. *Id.* (citing *Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166, 193 (1999)).

Prior appellate rulings on similar facts stand for the proposition that any error here was harmless:

> In *Commonwealth v. Brady*, our Supreme Court held that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and who is available for cross-examination may be used as substantive evidence of the truth of the matter asserted therein. In *Commonwealth v. Blount*, [the Superior] Court held that Brady did not mandate a specific jury instruction that prior inconsistent statements could be used both for impeachment purposes and as substantive evidence—instead, it was enough that the trial court did not instruct the jury that the statements could only be considered for impeachment purposes. Here, unlike *Blount*, the trial court instructed the jury that the witnesses' prior inconsistent statements could only be used to judge their credibility and not as substantive evidence of truth of the matter asserted therein. This instruction clearly violates *Brady*, and thus, we conclude that the lower court erred in refusing to give the instruction appellant requested.

*Commonwealth v. Bird*, 597 A.2d 1169, 1170–71 (Pa. Super. 1991) (internal citations omitted).

As in *Bird*, this court instructed the jury that Mr. Bonilla's prior inconsistent statement to police could only be used to determine credibility, and not as substantive evidence. While the Court in *Bird* determined this was error, it was found to be harmless:

> The next question we must determine is whether this error is constitutionally harmless. In *Blount*, we opined, albeit in dicta, that even if a trial court errs by instructing the jury to consider a prior inconsistent statement only for

- 17 -

impeachment purposes, the error can be harmless. For this proposition, we cited to *Commonwealth v. McMillan*, in which the trial court had specifically instructed the jury to consider prior inconsistent statements for credibility purposes only. Despite the error in the instruction, the panel in *McMillan* stated that the instruction did not prejudice the defendant because the witness admitted making the prior inconsistent statement, he explained that he made the statement because he feared the defendant, and the fact that the prior inconsistent statement was made was uncontested. Thus, the issue properly posed for the jury was whether the witness's in-court explanation for the statement was credible, and not whether the out-of-court statement had been made.

*Id.* at 1171 (internal citations omitted).

Here, ~~Mr. Bonilla also admitted to making the prior inconsistent statement out of fear.~~ There was no question that this statement was made, and Mr. Bonilla was available for cross-examination on the issue as well. The jury had only to determine the witness's credibility, and not whether such a previous statement was made. Under the same circumstances, the Superior Court has held that such error was harmless.

In addition to the foregoing, a traditional harmless error analysis compels the same conclusion. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Chmiel, supra* (quoting *Commonwealth v. Robinson*, 554 Pa. 293, 304, 721 A.2d 344, 350 (1998)). A finding of any of these three factors will support a conclusion of harmless error. *Id.* at 594, 889 A.2d at 529.

If the Court finds that the aforementioned jury instruction was given in error, that error was harmless. Indeed, it seems likely that both the first and third factors are present here. First, the fact that Mr. Bonilla gave an earlier statement to the police in which he did not identify either

- 18 -

defendant was presented to the jury. And Mr. Bonilla was available for cross-examination by the defense on this point. Moreover, Appellant and his co-defendant were given ample opportunity to address these inconsistent statements at trial and present them to the jury. Therefore, any prejudice created in not admitting the prior statements as substantive evidence was *de minimis*.

Even still, the strongest factor here is the third. Francisco Bonilla, the complainant, spoke to detectives a second time to correct his initial statement. He stated that he was in fear due to threats from Appellant and Hunter, and that was why he had not initially identified them. N.T., 01/14/2014, at 71. He subsequently identified both defendants consistently. N.T., 01/14/2014, at 52; N.T., 01/15/2014, at 61–62. Both men were well known to Mr. Bonilla prior to the robbery. Shortly after the robbery, Mr. Bonilla's car was located in the possession of Appellant's half-brother. N.T., 01/15/2014, at 113–14. Evidence of guilt was so overwhelming that any error in the jury instruction was harmless.

## Conclusion

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

J.